**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Fred MOSLEY, Defendant-Appellant.**

**No. 73–3336.**

United States Court of Appeals,
Fifth Circuit.

July 5, 1974.

---

J. D. Quinlivan, Jr., Mobile, Ala. (Court-appointed), Ian Frederick Gaston, Mobile, Ala., for defendant-appellant.

Charles White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before BELL, SIMPSON and INGRAHAM, Circuit Judges.

BELL, Circuit Judge:

In a jury trial, appellant was convicted for distributing and possessing with intent to distribute heroin in violation of 21 U.S.C.A. § 841(a)(1). His sole defense was entrapment.

Because the district court did not present the *Bueno*-type [1] issue to the jury, we reverse and remand for a new trial.

The salient consideration concerns the role of the government undercover agent in the case, a Deborah Reaves, an admitted heroin user. While in the company of Ms. Reaves on January 6, 1973, Larry Carver, an agent of the Bureau of Narcotics and Dangerous Drugs (B.N.D.D.) negotiated the purchase of .093 grams of heroin from appellant at a restaurant in Mobile, Alabama. This sale was the substance of the offense for which appellant was tried and convicted.

The sum of appellant's contention is that Ms. Reaves furnished appellant the heroin sold to Carver. Appellant said she induced him to sell it to a boyfriend with whom she claimed she lived and to whom she owed money (who turned out to be Agent Carver and who was advancing Ms. Reaves money for living expenses for the Government). Appellant testified that at the time of this purported inducement, Ms. Reaves and appellant were "making love most of the time" in a motel room. Ms. Reaves denied that she furnished the heroin to appellant and testified she and appellant were in the motel cutting the heroin down into individual dosage units. She said that she first met the appellant on that day when he came to her apartment with a friend, and while there he sold single dosage "hits" to Ms. Reaves and others present.

■■ We have examined the record in detail and find that the evidence was sufficient to warrant jury instructions on the issue of entrapment. See United States v. Workopich, 5 Cir., 1973, 479 F.2d 1142. The burden is on the defendant to offer evidence sufficient to raise the issue for consideration by the jury ". . . that the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." Pierce v. United States, 5 Cir., 1969, 414 F.2d 163, 168. Once such an issue is raised the burden is on the Government to prove beyond a reasonable doubt that the accused was predisposed to commit the crime charged. United States v. Workopich, *supra*; Pierce v. United States, *supra*. The district court charged the jury on the basic question of entrapment, that is, of appellant's predisposition to commit the crime.[2]

---

1. United States v. Bueno, *infra*, 5 Cir., 1971, 447 F.2d 903.

2. "Now, in regard to the question of entrapment, the function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, a different question is presented when the criminal

The jury apparently resolved the conflicting evidence in favor of the Government and concluded the appellant was predisposed to commit the crime. There the matter would normally end. *E. g.,* United States v. Mitchell, 5 Cir., 1974, 493 F.2d 9.

█ This Circuit, however, held in United States v. Bueno, 5 Cir., 1971, 447 F.2d 903, that when a defendant testified that he obtained the contraband from a government undercover agent, the Government must produce the undercover agent to contradict the defendant's allegations in order to take the case to the jury. Ms. Reaves, the undercover agent, did in fact testify in this case. Then the jury must find beyond a reasonable doubt that the defendant did not obtain the contraband in question from the undercover agent. That question was not submitted to the jury here.

The Government contends that *Bueno's* vitality was eroded in United States v. Russell, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366. The majority in *Russell,* 411 U.S. at 434, 93 S.Ct. at 1644, 36 L.Ed.2d at 373, said they were "content to leave" the law of entrapment "where it was left" by the Court in Sherman v. United States, 1958, 356 U. S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848:

"The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'a different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.'"

The Court in *Russell* held that entrapment does not exist as a matter of law when the Government furnishes the accused a legal and obtainable material

design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commitment in order that they may prosecute.

In the event the evidence establishes that this is what the government did, then the defense of entrapment will lie. However, the fact that officers or employees of the government merely afforded opportunities or facilities for the commission of the offense does not defeat its prosecution, nor does the mere fact of the use of deceit in securing the commission of the crime by government officials or otherwise defeat the prosecution of the commission of such act, for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the government's deception actually implants the criminal design in the mind of an innocent defendant that the defense of entrapment comes into play.

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment, for example, when the government suspects that a person is engaged in the illicit sale of narcotics it is not entrapment for a government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such suspected person.

If then, the jury should find beyond a reasonable doubt from the evidence in the case that before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit the crimes such as charged in the indictment, whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some officer or agent of the government, then it is your duty to acquit him."

that is used by the accused to manufacture contraband. *Russell* did not involve the Government's supplying the contraband itself. While this Court's decision in *Bueno, supra,* was noted by the majority in Russell, *Bueno* was not overruled.

■ Our view that *Bueno* is still binding as precedent is in accord with dictum in two decisions in this Circuit since *Russell*.[3] In United States v. Workopich, 5 Cir., 1973, 479 F.2d 1142, 1144–1145, the Court observed that the Government in *Russell* supplied the defendant an ingredient that was itself legal, harmless and lawfully obtainable but was used to manufacture contraband. In *Bueno*, the unrefuted testimony was that the Government[4] supplied the contraband itself. Since in *Workopich* the Government furnished United States currency that was legal in itself, the court determined that *Russell* rather than *Bueno* controlled.

■ In United States v. Oquendo, 5 Cir., 1974, 490 F.2d 161, the Court reversed and remanded as a result of an error in the charge. The district court there attempted to give an instruction on a *Bueno*-type issue, but error was committed in casting the jury's ultimate determination whether to convict or acquit in terms of a mere credibility choice between the undercover agent and the defendant. 490 F.2d at 165. The Court observed that the facts may require submission to the jury as separate concepts both the standard entrapment defense and a *Bueno*-type issue. *Id.* at 164–165, n. 8. Thus the law of this Circuit is that a defendant, where entrapment is an issue, may be acquitted for lack of predisposition, or, even though disposed, where the undercover agent supplies him with the contraband.

■ We therefore hold the facts sufficient in the instant case to warrant the dual instruction. It was error to deny the request for a *Bueno*-type instruction.

■ Because a new trial is thus required, we reach only one of appellant's other contentions.[5] As a matter of

---

3. The Government at oral argument contended that this Circuit's decision in United States v. Mitchell, 5 Cir., 1974, 493 F.2d 9, is contrary to the *Bueno* rationale. *Mitchell* did not discuss *Bueno* simply because no *Bueno* question was presented.

There is some indication that other Circuits may consider claims that an undercover agent furnished contraband or claims of other kinds of governmental "creative activity" as evidence to be weighed by the jury in determining the issue of predisposition. Following *Russell*, the Supreme Court vacated the Seventh Circuit's decision in United States v. McGrath, 7 Cir., 1972, 468 F.2d 1027, vacated and remanded, 412 U.S. 936, 93 S.Ct. 2769, 37 L.Ed.2d 395, for further consideration in light of *Russell*. On February 26, 1974, the Seventh Circuit cited *Russell* as controlling and affirmed the conviction as to both counts. 14 Crim.L.Rep. 2488. Initially in *McGrath* the Seventh Circuit had reversed a conviction for possession of counterfeit currency and conspiracy to produce and pass counterfeit obligations where the government had taken charge and supervised a counterfeiting operation after the defendant had initially produced counterfeiting materials and had attempted to locate a willing printer. See also United States v. Rosner, 2d Cir., 1973, 485 F.2d 1213; United States v. Johnson, 9 Cir., 1973, 484 F.2d 165, 167, cert. denied, 414 U.S. 1112, 94 S. Ct. 842, 38 L.Ed.2d 739; Note, Entrapment: Sorrells to Russell, 1974, 49 Notre Dame Law. 579, 582 n. 40; 1974, 42 Fordham L. Rev. 454, 462; Note, Elevation of Entrapment to a Constitutional Defense, 1974, Journal of Law Reform 361, 384.

4. The acts of the informer are imputed as in concert with the Government. Sherman v. United States, 1958, 356 U.S. 369, 373–375, 78 S.Ct. 819, 2 L.Ed.2d 848.

5. Appellant contends the district court unduly restricted his cross-examination of the government undercover agent Ms. Reaves. A full cross-examination into relevant matters is a right. *See* Grant v. United States, 5 Cir., 1966, 368 F.2d 658, 661. Restricting cross-examination should be considered by a trial court in the face of this general rule.

Nor do we reach here the question and applicability of Williamson v. United States, 5 Cir., 1962, 311 F.2d 441, on the Government's fee arrangement with its informer Ms. Reaves.

guidance for the subsequent trial, it should be noted that by waiving the defense of insanity at the time of the offense, a defendant does not necessarily waive the relevance of his mental competency on the question of predisposition. Appellant attempted to introduce evidence that he had a head injury and brain surgery sometime prior to the time of this offense and as a result of this had a changed personality and was more easily swayed by others. All such evidence was excluded by the trial court. The district court ruled that appellant waived at a pretrial omnibus hearing the defense of insanity at the time of the offense. The difficulty of proving a defendant's predisposition has been widely observed [6] and the courts have generally approved the admission of hearsay evidence, including hearsay reputation evidence, to prove a defendant's predisposition to commit the crime. United States v. McKinley, 5 Cir., 1974, 493 F.2d 547; United States v. Simon, 5 Cir., 1973, 488 F.2d 133. We cannot say that a head injury, a changed personality, and a resulting tendency to be easily swayed by others are not relevant factors to be considered on the issue of predisposition. This is not the same as attempting to prove insanity at the time of the offense under the *Blake* formulation, Blake v. United States, 5 Cir., (en banc), 1969, 407 F.2d 908. In fact, on the same court-provided form where appellant circled that he would not rely on a defense of insanity at the time of the offense appellant or his counsel also circled that the general nature of the defense was a "lack of mental responsibility." Evidence relevant to appellant's predisposition, one way or the other, should go to the jury for resolution with proper instructions.

Reversed and remanded.

**6.** See United States v. Russell, *supra*, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, 380 (J. Stewart dissenting) ; Note, The Supreme Court, 1972 Term, 1973, 87 Harv.L. Rev. 1, 247; Note, Entrapment-Sorrells to Russell, *supra*, 1974, 49 Notre Dame Law. 579, 583.