**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rudy SOTO, Defendant-Appellant.**

**No. 74–1228.**

United States Court of Appeals,
Fifth Circuit.

Nov. 20, 1974.

---

Jerry T. Calhoun, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Mary L. Sanderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before TUTTLE, WISDOM and GEE, Circuit Judges.

WISDOM, Circuit Judge:

In this narcotics case the defendant pleads entrapment. He contends that one government agent supplied him with heroin to sell to another government agent; that he was a trapped innocent. Fortuitously, the informer allegedly supplying the heroin was murdered three months before the defendant's trial. The defendant relies on the *Bueno* defense: "The defendant having testified to facts which established a defense as a matter of law, the government has the duty to come forward with contrary proof, if it is to carry its ultimate burden of proving guilt beyond all reasonable doubt." United States v. Bueno, 5 Cir. 1971, 447 F.2d 903, 906. In *Bueno* neither party produced the informer who supplied the heroin. In effect, the prosecution simply relied on the jury to reject Bueno's credibility. In United States v. Oquendo, 5 Cir. 1974, 490 F.2d 161, 164, this Court reaffirmed the viability of *Bueno* even after United States v. Russell, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, but "emphasize[d] that the question of whether the *Bueno* defense has been established is for the jury as long as the government has come forward with sufficient evidence contravening the defendant's allegations". In *Soto* the government did not just rely on the incredibility of the defendant's testimony, although here, as in all cases, the jury's traditional role of determining credibility cannot be taken from it. In this case the government came forward with sufficient evidence

contradicting the defendant's story of entrapment to justify the case going to the jury. On these facts the jury found the defendant's defense of entrapment incredible beyond a reasonable doubt. We affirm.

Rudy Soto appeals his conviction by a jury on six counts of unlawfully transporting and selling heroin in violation of 21 U.S.C. § 174 and 26 U.S.C. §§ 4704, 4705, and 7237(b).[1] He testified that he was entrapped by Santos Tores Lura ("Tico"), a government informer, who supplied him with the heroin in question.

There were three principal participants in the heroin transactions for which the defendant was convicted— Soto, the defendant; Ruben Monzon, a Federal undercover narcotics agent; and Tico, the government informer. Soto and Monzon both testified at the trial. Tico's role in the transactions forms the basis of Soto's appeal.

Tico was a known drug addict and had been arrested earlier in 1970, but not charged, for possession of heroin. His police record included numerous felony convictions. He was without visible means of support and lived in his automobile with his pregnant common law wife, who was also an addict. Monzon denied that the government had provided Tico with either money or drugs.

Tico acted as an informer both for the Federal Bureau of Narcotics and Dangerous Drugs and for the Houston Police Department. His role, in this capacity, was to identify narcotics dealers, and to arrange meetings between the dealers and agents posing as buyers. Soto, although he had no prior criminal record, was among those identified by Tico as dealers in heroin. Tico was instructed by a government agent, Arnold Dreyer, to arrange a transaction between Soto and Ruben Monzon.

In his testimony at trial, Soto depicted himself as a relative innocent, and Tico as an inveigler and the source of the heroin. Soto testified that Tico had persistently asked him to act as a middleman in heroin transactions; Tico had explained that he could not deal directly

---

1. This is an out-of-time direct criminal appeal from a judgment of conviction and sentence entered on April 29, 1971. On October 26, 1970, defendant was charged in a six-count indictment alleging illegal sales of heroin. Count 1 alleged that on or about July 15, 1970, the defendant had willfully and knowingly concealed, transported and sold approximately 45.75 grams of heroin, knowing the same to have been imported into the United States contrary to law, in violation of 21 U.S.C. § 174. Count 2 alleged that such heorin was not sold in or from the original stamped package bearing the required tax stamps, in violation of 26 U.S.C. § 4704. Count 3 alleged that such heroin was not sold pursuant to the required written order form from the Secretary of the Treasury, in violation of 26 U.S.C. §§ 4705 and 7237(b). Counts 4, 5, and 6 of the indictment alleged identical offenses involving a second sale of approximately 103.71 grams of heroin by the defendant on July 20, 1970.

At his arraignment on October 30, 1970 the defendant in open court pleaded not guilty to each count of the indictment, and the case was tried before a jury on February 1 and 2, 1971. Following a verdict of guilty on all counts of the indictment, the defendant was thereafter sentenced by the Court to a term of imprisonment for 10 years on each count, the sentences to run concurrently. No appeal was taken following the entry of judgment and sentence on April 29, 1971.

On January 23, 1973, the defendant filed a § 2255 motion to vacate sentence contending that he had been financially unable to appeal his conviction in 1971 and that neither the Court nor his retained attorney had advised him of his right to appeal in forma pauperis and to the appointment of counsel on such appeal.

On January 15, 1974, following an extensive evidentiary hearing the district court entered an order finding that neither the court nor counsel had advised the defendant of his right to appeal his conviction in forma pauperis and to appointment of counsel in the event of financial inability; that the defendant's attorney had never advised the court of the defendant's desire to appeal or of his financial inability to do so; and that the defendant had not otherwise been affirmatively advised of his rights regarding appointment of counsel on appeal. The court's order directed that the defendant be granted an out-of-time appeal, with leave to proceed in forma pauperis.

with buyers himself because of his reputation. Soto asserts that he resisted these importunings for a number of months until one morning when Tico arrived and announced that he had arranged a sale of heroin that could be consummated if Soto would help him. Soto, so he said, was worn down and acquiesced. Tico cautioned that it was important for Soto to appear to be the actual seller. He went to get the buyer, leaving his heroin with Soto. When he returned, he was accompanied by Monzon, the supposed buyer. In Soto's presence, Tico "cut" and measured the heroin. Monzon then paid Soto and left with the heroin.

Later, there was a second transaction. According to Soto, Tico again asked him to act as the seller. Soto, so he said, again protested, then relented "just one more time". Again Monzon was the buyer. Soto testified that on this occasion he told Monzon that the heroin was Tico's and that Tico had set the price. Monzon paid and left with the heroin.

Monzon contradicted Soto. Monzon testified that it had been Soto, not Tico, who had cut and measured the heroin at the first sale. He also testified that Soto, during the course of the first sale, had admitted that he had received the heroin from Mexico on consignment to him. Monzon testified that at the first transaction Soto pocketed the cash payment given for the two ounces of heroin; Soto, however, testified that he placed the money on the dresser. Monzon testified that Soto quoted a price of $600 an ounce for the heroin, and discussed the price of marijuana to be purchased in the future; Soto denied that he ever discussed the price of heroin. Agent Dreyer testified that on the occasion of the second heroin transaction he maintained surveillance over the appellant's house some forty-five minutes before the arrival of Monzon and that "Tico" was not present; while Soto testified that "Tico" had left

four ounces of heroin just prior to the arrival of Monzon.

In *Bueno,* this Court held that entrapment is shown as a matter of law when an informer furnishes the contraband to the prospective seller—a rule we have recently reaffirmed. See United States v. Mosley, 5 Cir. 1974, 496 F.2d 1012; United States v. Oquendo, 5 Cir. 1974, 490 F.2d 161 (dictum); United States v. Workopich, 5 Cir. 1973, 479 F.2d 1142 (dictum).[2] In establishing this defense, it makes no difference that government agents involved are unaware that their informer is the defendant's supplier. As between an agent and an informer acting together, each is deemed to have knowledge of the actions of the other. Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; United States v. Bueno.

We do not question the holdings in *Bueno, Oquendo, Workopich,* and *Mosley.* But in these cases the evidence was clear that the government bought heroin from itself or the government had the opportunity of producing the supplier of the heroin to contradict the defendant's testimony. Here, the informer said by the defendant to have been the supplier was, at the time of the trial, beyond the reach of terrestrial subpoena. There was, however, sufficient evidence for the jury to decide the issue of entrapment. Monzon testified that the government had not supplied Tico with money or drugs. Tico had identified Soto as a dealer in heroin, thereby showing a predisposition by Soto to commit the offense with which he was charged. Dreyer, a government agent, because of information received from Tico, instructed Tico to arrange a heroin transaction between Soto and Monzon. According to Monzon, Soto expertly "cut" and measured the heroin. The jury could fairly have drawn the inference that Tico had no means with which to purchase the heroin in ques-

2. These cases considered and rejected the contention that United States v. Russell, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed. 2d 366, had undermined *Bueno.*

**560**

tion; Soto's credibility was for the trier of facts.

In sum, the issue of entrapment was properly submitted to the jury in this case. The jury decided, as was its right, that Soto's testimony as to entrapment was incredible. He was an "unwary criminal", not an entrapped innocent. Sherman v. United States, 356 U.S. at 372, 78 S.Ct. 819.

The judgment is affirmed.