**UNITED STATES of America, Plaintiff,**

v.

**Lazaro VISUNA, Defendant.**

**No. 75–74–Cr–CA.**

United States District Court, S. D. Florida.

May 9, 1975.

Robert W. Rust, U. S. Atty. and Samuel A. Alter, Asst. U. S. Atty., Miami, Fla., for the government.

James G. Roth, of Pollack, Tunkey, Robbins, Roth & Weiner, Miami, Fla., for defendant.

## ORDER DENYING POST TRIAL MOTIONS

ATKINS, District Judge.

This cause has come before the Court upon motions of the defendant, Lazaro Visuna, for arrest of judgment, to set aside the verdict, for a new trial and for dismissal based on government misconduct. A number of points have been urged by the defendant in support of these motions. Only three merit consideration here.

The defendant maintains that he was denied the right of trial by a fair and impartial jury. Six members of the twelve-member jury previously served in another case in which the key government witness, Rosa Gonzalez, testified. Similar theories of government misconduct were urged in these cases.

Consistent with the view generally of federal law, this Court denied the defendant's motion to strike for cause any juror who had previously served in another case in which the same government witnesses, particularly the informant, Gonzalez, had testified. For mere service on another jury which was confronted with similar charges and similar facts is not, even when some of

the government witnesses are the same, a type of experience from which the law would infer bias and is, in itself, an insufficient basis for challenge for cause. United States v. DeMet, 486 F.2d 816 (7th Cir. 1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558; United States v. Jones, 486 F.2d 476 (8th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472; Government of Virgin Islands v. Cruz, 478 F.2d 712 (3d Cir. 1973); Government of Virgin Islands v. Hendricks, 476 F.2d 776 (3d Cir. 1973); Government of Virgin Islands v. Williams, 476 F.2d 771 (3d Cir. 1973); United States v. Stevens, 444 F.2d 630 (6th Cir. 1971); United States v. Haynes, 398 F.2d 980 (2d Cir. 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124; United States v. Cooper, 332 F.2d 790 (3d Cir. 1964). *But see*, United States v. Tropeano, 476 F.2d 586 (1st Cir. 1973), cert. denied, 414 U.S. 839, 94 S.Ct. 90, 38 L.Ed.2d 75; Casias v. United States, 315 F.2d 614, 619 (10th Cir. 1963), cert. denied, 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (C. J. Murrah, dissenting); Everitt v. United States, 281 F.2d 429 (5th Cir. 1960).

The Fifth Circuit's expression in *Everitt, supra,* does not militate against the manifest weight of federal authority on this issue. Suffice it to say that the circumstances surrounding the reversal of the defendant's conviction in *Everitt* were peculiar to that case. *See,* United States v. Ragland, 375 F.2d 471, 476 at n. 2 (2nd Cir. 1967).

The Court conducted an extensive inquiry of these six jurors concerning their ability to judge the credibility of all witnesses under the circumstances of this particular case, including any witnesses who appeared before those jurors in previous cases. All manifested such an ability.

The jury retired to consider its verdict at approximately 4:30 p. m. on April 11, 1975. At approximately 6:10 p. m. the jury returned with its verdict of guilty on both counts of a two count indictment. Count I charged the defendant with knowingly and intentionally possessing with the intent to distribute approximately 127.8 grams of cocaine on June 18, 1974. In Count II, the defendant was charged with distribution of the aforesaid amount of cocaine on the same date.

Upon poll of the jury, juror number ten, Joan P. Wheaton, indicated that the verdict on Count I was not shared by her. She stated, however, that she joined in the verdict on Count II. The remaining jurors were polled. The jury was then sent back to the jury room for further deliberations with a new verdict form. During the resumed deliberations, juror Wheaton communicated with the Court through a written note delivered to the United States Marshal. That note read as follows:

"Your Honor:

Based on the testimonies I feel that it was not Lazaro Visuna's own intention (postulated on his own self-determination) to possess the controlled substance.

I find him guilty of Count II: knowingly and intentionally distributing the substance.

Please advise me of any recourse.

Respectfully.

Joanne Wheaton"

After consultation with the attorneys, the jury was called back and a second verdict of guilty was rendered and received on Count II. The jury was polled and manifested unanimity on Count II. The verdict form was left blank on Count I and after further inquiry by the Court, a mistrial was declared on that count.

■ The poll of the jury was conducted in accordance with F.R.Crim.P. 31(d) and the ABA Standards for Criminal Justice. Trial by Jury § 5.5. Defendant's objection to the continuation of the poll after juror Wheaton expressed her partial dissent is without merit. The poll was conducted to obtain a voluntary expression from each juror and the rec-

**355**

ord is devoid of any coercive circumstances surrounding the poll. Although the initial verdict on Count II was a "valid verdict" as defined in United States v. Taylor, 507 F.2d 166 (5th Cir. 1975), the Court deemed it appropriate, because of the possibility of confusion over the defense of entrapment which applied to both counts, to allow the jury to reconsider both counts after the registration of dissent by juror Wheaton on Count I.

The circumstances surrounding the verdict have given rise to another claim. The defendant contends that the Court was precluded from accepting the "second" verdict of the jury under the principle of collateral estoppel set forth in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The defendant has never elaborated upon this contention and the Court can only speculate on the defendant's position. For it is unclear exactly what issue was determined favorably to the defendant on Count I which would preclude a verdict of guilty on Count II. At any rate, it appears to the Court that the defendant is really urging that the verdict was inconsistent and therefore should not stand.

■ If this is the case, defendant misperceives the reach of Ashe v. Swenson. It is settled that consistency in verdicts among the varied charges of a multi-count indictment is not required as long as there is consistency within individual counts and ample evidentiary basis for conviction. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); United States v. Stiglets, 463 F.2d 242 (5th Cir. 1972), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488; United States v. Panzavecchia, 446 F.2d 1293 (5th Cir. 1971),

cert. denied, 404 U.S. 966, 92 S.Ct. 343, 30 L.Ed.2d 286; United States v. Lloyd, 425 F.2d 711 (5th Cir. 1970). Although it may be true that the holding in Ashe v. Swenson undercuts to some extent the dicta in support of Justice Holmes decision in Dunn, supra, it is clear that the result reached in Dunn is unscathed by the Ashe v. Swenson decision. United States v. Greene, 497 F.2d 1068 (7th Cir. 1974); United States v. Fox, 140 U.S. App.D.C. 129, 433 F.2d 1235, 1238 at n. 22 (1970). But see, United States v. Fox, supra, at p. 1239 (C. J. Bazelon concurring). For the purposes behind the two principles—collateral estoppel and the rule that consistency in verdicts is not required—are completely different. The basis of the rule permitting inconsistent simultaneous verdicts to stand is that juries frequently convict on some counts but acquit on others not because they are unconvinced of guilt but simply because of compassion or compromise. United States v. Fox, supra.[1] Because of this possibility, then, even assuming that the verdicts are inconsistent, their verdict "cannot be upset by speculation or inquiry into such matters." Dunn, supra, 284 U.S. at 394, 52 S.Ct. at 191.

■ The situation sub judice, however, poses one additional problem not usually found in cases discussing alleged inconsistent verdicts. In this case, Juror Wheaton, in an apparently spontaneous and unsolicited fashion expressed the basis for her position in a note to the Court, the contents of which are set forth above. The Court has analysed that note in an attempt to ascertain whether the juror misunderstood and misapplied the law surrounding the defendant's theory of entrapment.[2] The jury was instructed that the defense of entrapment applied to both counts. But

1. The doctrine of collateral estoppel, on the other hand, finds its underpinnings in the constitutional prohibition against double jeopardy. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

2. The theory of entrapment pursued at trial was that set forth in United States v. Bueno,

447 F.2d 903 (5th Cir. 1971), cert. denied, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411. The Bueno theory was reaffirmed in United States v. Oquendo, 490 F.2d 161 (5th Cir. 1974) [Oquendo I] and United States v. Mosley, 496 F.2d 1012 (5th Cir. 1974).

the Court is hard-pressed to read into the juror's note the conclusion that she applied the entrapment defense to one count and not the other.[3] In fact, it is difficult to comprehend what the juror meant by her note. Thus, in the case at bar, the general rule that consistency in verdicts is not required is applicable for the Court can only speculate on the basis for the juror's decision.

One final point merits attention. It was the defendant's theory of the case that the husband of the government informer, Rosa Gonzalez, also participated in the entrapment of the defendant. Because the husband also allegedly received consideration by the government for this participation, the defendant argued that he, the husband, occupied the position of a government informer. Under *Bueno* and its progeny, it is asserted, the failure of the government to produce the husband necessitates a judgment of acquittal or dismissal of the indictment. Indeed, there is language contained in the *Bueno-Oquendo I–Mosley* trilogy which would suggest that the failure under any circumstances of the government to produce an informant who allegedly supplied the contraband will result in dismissal of the prosecution. It is clear that this is not the intendment of this line of entrapment cases, however. *See,* United States v. Gomez-Rojas, 507 F.2d 1213 (5th Cir. 1975); United States v. Soto, 504 F.2d 557 (5th Cir. 1974).[4] The failure of the government to produce the informer who allegedly supplied the contraband may well result in a dismissal of the charges, not because of some wooden application of a general rule, but rather because of both the heavy burden of proof which is borne by the government when the Bueno defense is raised and the usual lack of evidence other than the informant's account available in the Bueno situation. *See,* United States v. Gomez-Rojas, *supra* at 1218.

■■ In order to take a *Bueno*-type case to the jury, the government must "come forward with sufficient evidence contravening the defendant's allegations" once the government misconduct theory has been raised. *Oquendo I, supra* at 164. *See,* United States v. Oquendo, 505 F.2d 1307 (5th Cir. 1975 [Oquendo II]); United States v. Pollard, 483 F.2d 929 (8th Cir. 1973), cert. denied, 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762. In the case at bar, the informer, Rosa Gonzalez, was portrayed by the defendant as the main culprit under his theory of entrapment. The defendant maintained that the contraband passed from Rosa's husband through Rosa to the defendant. But Rosa Gonzalez testified and refuted the defendant's allegations. Under the circumstances of this case there was no need for the government to call Rosa's husband. The defendant's allegations were sufficiently contravened to permit the jury to consider the fate of the defendant.

In light of the foregoing, it is ordered and adjudged that the defendant's post-trial motions are denied.

---

3. In some circumstances, of course, especially where the general theory of entrapment is raised, an application of the defense to one count and not to the other may be entirely consistent. *See,* United States v. Bevins, 430 F.2d 601 (6th Cir. 1970). That would not be the case, here, however.

4. Obvious exceptions to the Bueno rule that the informer should be called by the government to rebut the charge of government misconduct occur when the informer is no longer available to testify—either because of death, United States v. Soto, 504 F.2d 557 (5th Cir. 1974) or incapacity which is not the result of government action, United States v. Gomez-Rojas, 507 F.2d 1213 (5th Cir. 1975).