**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Oscar DOVALINA and John Doe, a/k/a
Rodolfo Soliz, Defendants-Appellants.**

**No. 75–1043.**

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1976.

Daniel V. Alfaro, Corpus Christi, Tex., for Dovalina.

Alberto R. Huerta, J. A. Canales (Court-appointed), Corpus Christi, Tex., for Soliz.

Edward B. McDonough, U. S. Atty., James R. Gough, Jr., Mary L. Sinderson, B. Stephen Rice, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG and AINSWORTH, Circuit Judges, and NICHOLS,* Associate Judge.

* Of the U. S. Court of Claims, sitting by designation.

AINSWORTH, Circuit Judge:

Oscar Dovalina and Rodolfo Soliz were convicted of distributing twenty-four grams of cocaine to a Drug Enforcement Administration (DEA) undercover agent in violation of 21 U.S.C. § 841(a)(1).[1] At their jury trial, Dovalina testified that he had received the cocaine in question from the same Government informer who had helped to arrange the sale. Defendants' main contention on appeal is that under *United States v. Bueno*, 5 Cir., 1971, 447 F.2d 903, the Government's failure to counter Dovalina's testimony in this regard with testimony from the informer himself entitled them to acquittal on the basis of entrapment as a matter of law. We hold that *Bueno* does not compel acquittal under the facts of this case and affirm.

The series of events leading to the apprehension of Dovalina and Soliz began with the introduction of Dovalina to Robert Havens, a DEA agent, by David Pedigo, a paid Government informant. Following a number of conversations between Havens, Pedigo, and Dovalina, a meeting was arranged. On the afternoon of April 26, 1973, the parties gathered near the French Quarter Apartments in Corpus Christi, Texas, at which time all four went for a ride in a car driven by Dovalina. Prior to embarking, Dovalina handed the cocaine to Soliz so that he would be free to drive. During the course of the ride, Soliz passed the cocaine to Havens, after being signaled to do so by Dovalina. Defendants maintain that Soliz was merely "along for the ride" and was not more deeply implicated in the transaction, whereas testimony introduced by the Government indicates that both Soliz and Dovalina were dealers capable of procuring substantial quantities of cocaine and heroin.

At trial, Dovalina testified that Pedigo had repeatedly asked him to get some cocaine for Havens, and that even as late as two hours prior to the meeting, during the 3 p.m. telephone call which finalized arrangements, Pedigo "still wanted some." However, Dovalina claimed that he had been unable to acquire any, and that he proceeded to the meeting point only because Pedigo had told him to come anyway. After arriving at the French Quarter Apartments, Dovalina continued, there was a thirty-second period when he and Pedigo were outside of Havens' hearing at the rear of the Dovalina vehicle. During that time, Pedigo was said to have slipped Dovalina the cocaine, explaining that he had been able to obtain it from another source and that he needed Dovalina to consummate the sale because he already owed Havens some money and was unable to negotiate the sale directly.

To rebut Dovalina's entrapment testimony, the Government called Havens, who testified that he had subjected Pedigo to a routine "strip search" just prior to the meeting and that he had thereby determined that Pedigo was carrying no contraband or concealed weapons on his person or in his clothing. After the search, Havens and Pedigo spent a few minutes together in Pedigo's sparsely furnished apartment, and then walked together down a stairway to the parking lot where they met Dovalina and Soliz. Pedigo was thus continually in the presence of Havens from the time of the search until the consummation of the sale. Despite Havens' concession on cross-examination that it might have been possible for Pedigo to obtain cocaine from some independent source during this period, if the jury believed Havens' testimony, the possibility was clearly remote. Similarly, although Havens admitted that he had not checked Pedigo's hair, if the jury accepted his testimony that the uncompressed package of cocaine was approximately the size of a tennis ball, it is beyond belief that Havens would have overlooked a tennis ball-size protuberance underneath Pedigo's hair. As has previously been noted, the Government failed

---

1. Dovalina was sentenced to serve 12 years with a special parole term of 4 years, and Soliz was sentenced to 10 years with a special parole term of 4 years.

to produce Pedigo himself, apparently because the Government had lost contact with Pedigo and because there had been no indication prior to trial that a *Bueno*-type entrapment defense would be raised.

■ In *Bueno,* we held that entrapment exists as a matter of law where a defendant sells contraband to one Government agent that has been furnished to him for distribution purposes by another Government agent or informer.[2] Further, we held that once a defendant has testified to facts tending to establish such a defense,

> the government has the duty to come forward with contrary proof, if it is to carry its ultimate burden of proving guilt beyond all reasonable doubt. . . . If the government cannot come forward with evidence that contradicts Defendant's testimony, then he is entitled to discharge, as a matter of law. If the government produces evidence sufficient to raise a jury question, then the case should be submitted with proper instructions [to the jury] . . .. 447 F.2d at 906.

In *Bueno,* the Government failed to submit any evidence contradicting the defendant's entrapment testimony, arguing that the jury was entitled to assess the credibility of the defendant's testimony and had the right to reject it *in toto.* 447 F.2d 906–907. Under those circumstances, we held the Government had failed to meet its burden of going forward with conflicting evidence. Here, in contrast, the Government introduced evidence of the strip search immediately prior to the meeting and of the close

observation of Pedigo from the time of the search until the sale—evidence which was clearly inconsistent with Dovalina's account of receiving the cocaine from Pedigo. Appellants contend that without producing Pedigo, the Government cannot meet its threshold burden of introducing sufficient evidence of non-entrapment to reach the jury. In view of our decision in *United States v. Soto,* 5 Cir., 1974, 504 F.2d 557, however, this contention is without merit. In *Soto,* the informer who allegedly supplied the contraband was murdered prior to trial and was thus "beyond the reach of terrestrial subpoena." 504 F.2d at 557, 559. Nonetheless, in light of the agent-buyer's testimony tending to refute the defendant's entrapment allegations, we held that there was sufficient evidence for the jury to decide the entrapment issue. *Id.* at 559. *See also United States v. Gomez-Rojas,* 5 Cir., 1975, 507 F.2d 1213, 1220 (Government cannot be penalized where an informant's testimony is unavailable due to valid exercise of his Fifth Amendment privilege against self-incrimination); *United States v. Tatum,* 5 Cir., 1974, 496 F.2d 1282, 1284 (Government under no duty to produce informers where their testimony is not essential to the Government's case).

■ Of course, Pedigo was not unavailable at trial in the same absolute sense as the *Soto* or *Gomez-Rojas* informants, but the crucial consideration is not the availability of the informant so much as the availability of Government evidence, whether direct or circumstantial, on the basis of which a jury could conclude beyond reasonable doubt that no *Bueno* entrapment occurred.[3] Lan-

2. This circuit has taken the view that *Bueno's* vitality was not eroded by *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). *See United States v. Oquendo,* 5 Cir., 1974, 490 F.2d 161, 164 & n. 7 (dictum); *United States v. Workopich,* 5 Cir., 1973, 479 F.2d 1142, 1145 (dictum). Recently, the Supreme Court has granted certiorari in an Eighth Circuit case which rejected the *Bueno* defense as inconsistent with *Russell. United States v. Hampton,* 8 Cir., 1974, 507 F.2d 832, *cert. granted,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975). The defendants here

would be in an even worse position if the Eighth Circuit approach to entrapment were ultimately to prevail. In the absence of the *Bueno* defense, their predisposition to aid and abet in the distribution of cocaine would undermine any conventional entrapment claim they might assert. *See United States v. Dovalina,* S.D.Tex., 384 F.Supp. 1185, 1186.

3. Once the *Bueno* defense reaches the jury, the Government has the burden of proving beyond a reasonable doubt that the defendant did not receive the contraband in question from a

guage in some earlier cases suggests that once a defendant has testified that he obtained contraband from a Government agent, "the Government must produce the undercover agent to contradict the defendant's allegations in order to take the case to the jury." *United States v. Mosley*, 5 Cir., 1974, 496 F.2d 1012, 1015 (dictum); *United States v. Oquendo*, 5 Cir., 1974, 490 F.2d 161, 163 (dictum). *See also Bueno, supra*, at 906. As Judge Atkins has rightly noted, however,

[i]t is clear that this is not the intendment of this line of entrapment cases . . . . *See United States v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir. 1975); *United States v. Soto*, 504 F.2d 557 (5th Cir. 1974). The failure of the government to produce the informer who allegedly supplied the contraband may well result in a dismissal of the charges, not because of some wooden application of a general rule, but rather because of both the heavy burden of proof which is borne by the government when the *Bueno* defense is raised and the usual lack of evidence other than the informant's account available in the *Bueno* situation. *See, United States v. Gomez-Rojas, supra* at 1218.

*United States v. Visuna*, S.D.Fla., 1975, 395 F.Supp. 352, 356. The relevant language in *Bueno* merely indicates that where neither party has produced the informant, the Government must do so if the informant's testimony would tend to disprove the defendant's story. 447 F.2d at 906. Taken in context, this language simply restates the fact that the Government has the burden of going forward with countervailing evidence once the

*Bueno* defense is raised. It in no way precludes the Government from producing evidence sufficient to raise a jury question with regard to the presence or absence of the objective facts underlying the *Bueno* defense by some other means. As we stated in *Oquendo, supra*,

We wish to emphasize that the question of whether the *Bueno* defense has been established is for the jury as long as the government has come forward with sufficient evidence contravening the defendant's allegations. 490 F.2d at 164.

In *Soto*, there was evidence that the informant lacked the financial resources to acquire the contraband and testimony from a surveillance officer that the informant had not been at Soto's house for at least forty-five minutes before the arrival of the agent who made the purchase. This Government evidence was in contrast to Soto's claim that the informant had given him the contraband "just prior" to the sale. If anything, the evidence in the instant case of the strip search and the continual observation of Pedigo by Havens, and at least for part of the time, by other surveillance officers, is even more persuasive on the nonentrapment point than the evidence available in *Soto*. Where, as here, the Government has introduced substantial circumstantial evidence which, if believed, would negate the existence of a *Bueno* defense, the jury may properly be allowed to resolve the conflict in the evidence. To hold otherwise might allow a wily defendant to establish an effective entrapment defense either by testifying that a nonexistent (and thus nonproducible) agent had supplied the contraband involved in his case,[4] or short of that, it

---

Government agent. *United States v. Gomez-Rojas*, 5 Cir., 1975, 507 F.2d 1213, 1218; *United States v. Mosley*, 5 Cir., 1974, 496 F.2d 1012, 1015.

**4.** Presumably, such a conjuring act could be undermined by testimony indicating that there was no such agent. Note, however, that in establishing the entrapment defense, "it makes no difference that government agents involved are unaware that their informer is the defendant's supplier." *United States v. Soto*, 5 Cir.,

1974, 504 F.2d 557, 559; *see Sherman v. United States*, 356 U.S. 369, 373–375, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *United States v. Gomez-Rojas*, 5 Cir., 1975, 507 F.2d 1213, 1218; *United States v. Bueno*, 5 Cir., 1971, 447 F.2d 903, 905. Conceivably, then, if *Bueno* is construed as allowing only testimony of the informant and not circumstantial evidence to suffice as rebuttal evidence on the entrapment issue, the Government might be put in the impossible position of being charged with constructive knowledge of the activities of a phantom infor-

might allow him to succeed with such a defense by strategically delaying disclosure of plans to claim entrapment until trial had begun, jeopardy had attached, and the Government had possibly lost its opportunity to locate and produce the informant.[5]

■■■ Having decided that the Government presented sufficient evidence to reach the jury on the *Bueno* defense, it is a short step to the conclusion that Dovalina's conviction should be affirmed. Examining the sufficiency of the evidence in the light most favorable to the Government, as we must, *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *United States v. Smith*, 5 Cir., 1975, 523 F.2d 771, we conclude that the jury's determination that the facts did not support a *Bueno* defense was a reasonable inference from the evidence. *See United States v. Black*, 5 Cir., 1974, 497 F.2d 1039, 1041 (all reasonable inferences and credibility choices which will support the jury's verdict must be made). The strong evidence of the strip search and the accompanying surveillance of Pedigo provided adequate grounds for the jury's rejection of Dovalina's claim that he received the cocaine from Pedigo and thereby acquired a *Bueno* defense. The court's jury instruction indicating it was "the Government's burden to establish beyond a reasonable doubt that there was no cocaine transferred by the informant to Mr. Havens" is in complete accord with our opinion in this case. In any event, appellants did not object to the form or charge of the instruction, but to the fact that it was given instead

of an instructed verdict of Not Guilty. Dovalina's argument that the district court erred in allowing a defense witness (Dovalina's father) to be asked whether he had heard that Dovalina dealt in narcotics is also without merit. Not only did the question fail to yield prejudicial evidence, inasmuch as the father's response was "No," but in addition, the father had been introduced as a character witness, and was thus open to cross-examination aimed at eliciting adverse reputation evidence. *Michelson v. United States*, 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948); *United States v. Franklin*, 5 Cir., 1973, 471 F.2d 1299, 1301–1302. Finally, any possible error in the court's admission of evidence of Dovalina's involvement in other drug transactions is moot in light of his defense of entrapment and the question of predisposition raised by that defense.

■ Two additional points warrant mention in connection with our affirmance of Soliz's conviction. First, in light of our disposition of the *Bueno* issue with regard to Dovalina, we need not reach the question whether or not Soliz is covered by our holding in *United States v. Rodriguez*, 5 Cir., 1973, 474 F.2d 587, that a person who has received contraband from a Government agent through a third party cannot assert the *Bueno* defense. And second, during oral argument, the question was raised whether Soliz's mere handing of the cocaine to the Government agent according to Dovalina's directions sufficed to support a conviction for distribution under 21 U.S.C. § 841, as opposed to mere possession, which is a separate and lesser

---

mant, whose nonexistence it was precluded from disproving. *See United States v. Dovalina*, S.D.Tex., 1974, 384 F.Supp. 1185, 1187.

5. We are aware, as was Judge Cox below, that language in *Sorrells v. United States*, 287 U.S. 435, 452, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932), suggests that no advance notice of an ordinary entrapment plea need be given by a defendant to the Government. As Judge Cox noted, however, the situation where a *Bueno* defense is involved is distinguishable. In contrast to the normal entrapment situation, where the jury can weigh the credibility of the defendant's entrapment claim against testimony of Government witnesses already present at trial, a rigid construction of *Bueno* as holding

that the credibility of the defendant is not in issue until after the informant testifies would impose an unreasonable burden on the Government. It would require the Government to be ready to produce the informant in any case which had even remotely involved one, no matter how unlikely it was that an entrapment defense would be raised or how strong the Government's independent evidence of guilt was. *United States v. Dovalina*, S.D. Tex., 1974, 384 F.Supp. 1185, 1186–1187. By rejecting the rigid interpretation of *Bueno* argued for by appellants here, we avoid the unreasonable production burden that might otherwise be imposed on the prosecution, without having to deviate from the *Sorrells* rule.

offense under 21 U.S.C. § 844. Under the relevant statutory definition, "distribute" means "to deliver (other than by administering or dispensing) a controlled substance." 21 U.S.C. § 802(11). The terms "deliver" or "delivery" are defined as "the actual, constructive, or attempted transfer of controlled substance, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). The legislative history of the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C. § 801 *et seq.*, makes it apparent that the type of possession covered by section 844 is "possession for one's own use." 1970 U.S.Code Cong. & Admin. News pp. 4566, 4577. Soliz clearly "delivered" the contraband to Havens and thus "distributed" it within the meaning of the statute; there is no foundation for a claim that he was possessing the cocaine held during the ride "for his own personal use"; indeed, he argues to the contrary. Soliz's conduct thus infringed section 841. There was more than ample evidence in the record on which the jury could have based a verdict of guilty; and there was no abuse of discretion in sentencing Soliz after his conviction.

The convictions of both appellants are Affirmed.