**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David ANDERTON, Defendant-Appellant.**

No. 81–1212.

United States Court of Appeals,
Fifth Circuit.

July 9, 1982.

---

John A. Brady, Fort Worth, Tex., for defendant-appellant.

John W. Sweeney, Jr., Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before BROWN, GEE and GARWOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

David Anderton appeals his conviction on one count of conspiring to bribe a public official and eleven substantive counts of bribery, in violation of 18 U.S.C. § 201(b)(3) and 371. We find little merit to his allegations of trial error and affirm the conviction.

### Facts

In a previous conviction, Anderton visited this Court. *United States v. Anderton*, 629 F.2d 1044 (5th Cir. 1980). We reversed and remanded his conviction because the trial court failed clearly to advise the jury on the

issue of entrapment. Rather than repeat ourselves, we incorporate by reference our earlier statement of facts and invite the reader to consult that opinion.

### Issues

Anderton raises three issues. First, he contends that the Court erred in not giving his requested jury instruction on the issue of entrapment.[1] His testimony, he declares, established entrapment "as a matter of law" so that the trial court should either have given his requested jury instruction or have granted his second motion for judgment of acquittal. From the premise, we think, the conclusion does not follow.

The Supreme Court, discussing a similar set of facts, affirmed a conviction and rejected the proffered entrapment defense. In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), five members of the Court agreed that the defendant's sale to government agents of heroin which he received from a government informer did not violate due process. Quoting *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), Justice Rehnquist explained, "We ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct in a case, such as this one, where the predisposition of the defendant to commit the crime was established." 425 U.S. at 489, 96 S.Ct. at 1649, 48 L.Ed.2d at 118 (Rehnquist, J., plurality op.). *Hampton* effectively overruled *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971), as we ourselves have recognized.[2]

---

1. The Court did instruct the jury on entrapment, as follows:

"Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment."

2. In the following cases, we either distinguished, criticized or questioned *Bueno*:

*U. S. v. Hill*, 626 F.2d 1301, 1306 (5th Cir. 1980); *U. S. v. Till*, 609 F.2d 228, 230 (5th Cir.), *cert. denied*, 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980); *U. S. v. Rodriguez*, 585 F.2d 1234, 1240 (5th Cir. 1978), *on rehearing en banc*, 612 F.2d 906 (5th Cir. 1980), *aff'd sub nom. Albernaz v. U. S.*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *U. S. v. Hansen*, 569 F.2d 406, 407, 408 (5th Cir. 1978); *U. S. v. Benavidez*, 558 F.2d 308, 309 (5th Cir. 1977); *U. S. v. Graves*,

In *Russell,* the Supreme Court sketched the contours of the entrapment defense. Russell had been convicted of the unlawful manufacture and sale of amphetamines. The Ninth Circuit reversed, holding that the actions of an undercover agent who supplied an essential chemical constituted entrapment as a matter of law. Reversing the Ninth Circuit, Justice Rehnquist stated,

> [E]ntrapment is a relatively limited defense [rooted] in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense but was induced to commit them by the government.

411 U.S. at 435, 93 S.Ct. at 1644, 36 L.Ed.2d at 375. He concluded: "It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." 411 U.S. at 436, 93 S.Ct. at 1645, 36 L.Ed.2d at 376.

This Court has discussed entrapment a score of times. Recently, we stated:

> When entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant. Thus a defendant who wishes to assert an entrapment defense must initially come forward with evidence "that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." Once the defendant has carried this burden, the government must, if it is to prevail, prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged.

*United States v. Tobias,* 662 F.2d 381, 384 (5th Cir. 1981), *quoting United States v. Dickens,* 524 F.2d 441, 444 (5th Cir. 1975), *cert. denied,* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).

In *United States v. Webster,* 649 F.2d 346 (5th Cir. 1981) (en banc), we gathered en banc to consider some aspects of the entrapment defense. As Judge Hill, writing for the Court, explained,

> [I]t is clear that when entrapment is at issue the focal point of the inquiry is on the predisposition of the defendant .... Once the defendant has carried this burden [of showing that the government's conduct might induce an innocent person to act], the government must, if it is to prevail, prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged.

649 F.2d at 348–49.

■ From this review of the entrapment cases, we are obliged to focus not on the government's actions, as Anderton suggests, but on the predisposition of the defendant to commit the crime. If he waited eagerly, ready and willing to violate the law, a criminal in search of a crime, then the government's actions in assisting him to that end, under *Hampton* and *Russell, supra,* are irrelevant.

■ Even if Anderton produced sufficient evidence to carry *his* burden on entrapment, *Webster, supra,* the government met its burden and, it seems, convinced the jury. The prosecution introduced taped conversations between Anderton and the agents at their initial meetings. The tapes reveal Anderton's "unbridled enthusiasm" for his new "career". He bragged that he had arranged for bookmaking locations *prior to* the meeting. He volunteered to begin booking baseball games, since he wanted to get started and football season had not yet opened. He involved several others in the bookmaking process and even solicited another bookmaker to pay protection money ($500 every two weeks) to the officers, of which he retained $200 for handling. Anderton was not above showing off a bit, taking pleasure in explaining to the officer why he preferred to operate two telephones at two different locations. When his wife

---

556 F.2d 1319 (5th Cir. 1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978); *U. S. v. Puma,* 548 F.2d 508, 509 (5th Cir. 1977); *U. S. v. Dovalina,* 525 F.2d 952, 954 (5th Cir.), *cert. denied sub nom. Soliz v.*

U. S., 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 197 (1976); *U. S. v. Conway,* 507 F.2d 1047, 1050 (5th Cir. 1975); *U. S. v. Oquendo,* 490 F.2d 61, 163 (5th Cir. 1974); *U. S. v. Workopich,* 479 F.2d 1142 (5th Cir. 1973).

ran away, Anderton—supposedly so terrorized by Pittman's threats—even called agent Lebredo to ask his help in locating his wife. These facts do not jibe with Anderton's professions of entrapment by coercion.

In the light of this evidence, Anderton's excuse that Pittman threatened and coerced him and that he merely said what Pittman instructed him to say might well have sounded lame to the jury. The jury is entitled to disbelieve the defendant. Obviously it did so. Anderton would have us overturn that finding, but he mistakenly assesses this Court's role. We are not a cruel stepparent, anxious to usurp the jury's proper role, a role that the Sixth Amendment protects. Our review is limited to deciding whether the evidence was sufficient to support the jury's decision. *See Masciale v. United States*, 356 U.S. 386, 388, 78 S.Ct. 827, 828, 2 L.Ed.2d 859, 861 (1958), where the Supreme Court held that entrapment was a matter for the jury, not the trial court. *See also Russell, supra*, where the Court affirmed that rule. We have no doubt that the evidence supported the conviction.

### Is It Alive Or Is It Memorex?

■ Anderton next complains of the admission of the taped conversations between himself and agent Lebredo, arguing that the government did not lay the proper predicate. He relies upon the Eighth Circuit case, *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), which imposes a seven-prong test for admissibility of a taped conversation. We have considered the *McMillan* test and found it lacking. Specifically, we have declined to require proof that the conversation "was made voluntarily and in good faith without any kind of inducement." *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977). Recognizing the trial court's discretion in determining whether to allow a recording into evidence, we required only that the prosecution lay a foundation by showing

the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in the relevant portions of the recording, and the identification of the relevant speakers.

551 F.2d at 66. The government recited this litany at trial and fulfilled its duty. The motion to strike was properly denied.

Anderton also asserts that the trial judge erred in issuing a limiting instruction to the jury concerning his description of the conversations he had with Pittman. In answering the government's objection on the grounds of hearsay, the judge told the jury: "I am admitting it on the basis for what this witness was relying on, not for the truth of what was being said." He allowed Anderton to relate the substance of his discussions with Pittman but cautioned the jury not to accept Anderton's recital for the truth of the matter.

■ Although the trial judge may have erred, his technical slip assisted rather than harmed Anderton's defense. The Court permitted the testimony as a statement of a co-conspirator under F.R.Evid. 801(d)(2)(E), which reads:

> **Statements which are not hearsay.** A statement is not hearsay if—
>
> \* \* \* \* \* \*
>
> **(2) Admission by party-opponent.** The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

That rule applies only to the admission of a statement against a party. It does not avail one in this rather unusual position

who seeks to introduce the evidence in his own behalf. Thus the Pittman conversations did not qualify for the 801(d)(2)(E) exceptions, being hearsay, and were not technically admissible at trial. Since the judge's exercise of his discretion in allowing the statements aided Anderton and apparently did not prejudice the Government, we find no error.

### Adjuring the Jury

■ Finally, Anderton complains of the trial court's decision to give an "*Allen* charge" to the jury, which had reported back that it was deadlocked.[3] An *Allen* charge, as all criminal law devotees know, is a sharp punch to the jury, reminding them of the nature of their duty and the time and expense of a trial, and urging them to try again to reach a verdict. We specifically have approved the use of such a charge. *See U. S. v. Bailey*, 480 F.2d 518 (5th Cir. 1973) (en banc), and cases cited therein. This charge closely resembles the charge in *Hale v. United States*, 435 F.2d 737, 739–40 (5th Cir. 1970), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971), which we approved. *See also United States v. Sutherland*, 463 F.2d 641 (5th Cir.), *cert. denied*, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972). It did not threaten the jury, set a

3. The judge instructed the jury as follows:

I am going to ask you to continue your deliberations in an effort to agree upon a verdict and dispose of this case if you can. And I have a few additional comments that I would like for you to consider as you do so. I want you to feel free to ask for any additional clarification or any additional matter in which this Court can be of help. You can give those to me in writing. All clarifications and matters have to come in writing to the Court so we can keep a record of it.

Now, this is an important case. The trial has consumed considerable time, effort and money to both the defense and the prosecution. If you should fail to agree on a verdict, this case is, of course, left open and it will have to be tried again.

Obviously, another trial would only serve to increase the time and effort and money to both sides, and there is no reason to believe that this case could be tried again by either side better or more exhaustively than it has been tried before you.

Any future jury must be selected in the same manner and from the same sources as you were selected and chosen.

There is no reason to believe that this case could ever be submitted to twelve men and women more conscientious, more impartial or more competent to decide it; or that more or clearer evidence could be produced.

Now, if a substantial majority of your number are for conviction, each dissenting juror ought to consider whether the doubt in his or her own mind is a reasonable one, since it appears to make no effective impression on the minds of the others.

On the other hand, if a majority, or even a lesser number of you are for acquittal, the other jurors should seriously ask themselves again and more thoughtfully whether they do not have a reason to doubt the correctness of their judgment, which is not shared by several of your fellow jurors; whether they should distrust the weight and sufficiency of the evidence which fails to convince several other jurors beyond a reasonable doubt.

But remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence.

But remember also that after full deliberations and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious convictions.

You must also remember that if the evidence in the case fails to establish guilt to you as a juror beyond a reasonable doubt, then it is your duty to vote not guilty.

Now, you may be as leisurely in your deliberations as the occasion may require and you should take all of the time which you may feel is necessary. No one is hurrying you in any way in this case.

I am going to ask you now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the other instructions I have previously given to you. Go back and read some of these instructions. Or if there are some of the instructions you are not clear about, do not hesitate to ask the Court. I want to make every instruction as clear as possible.

And with these instructions, I will ask you to return and let's give it another try. Approach it calmly and deliberately with respect for each other's attitudes and feelings and opinion and see if a unanimous verdict can be reached.

But again, I remind you that you are in no way to surrender your individual conscientious convictions in any manner.

With that instruction, I am going to ask that you retire and continue your deliberations and let's see what we can do with a little further discussion and deliberations.

deadline, or coerce them to set aside their scruples and arrive at a verdict. The charge, proper in its use, did not prejudice Anderton.

AFFIRMED.