UNITED STATES of America, Plaintiff-Appellee,

v.

Samuel B. HEWITT and Bobby Gene Chesser, Defendants-Appellants.

No. 80–7768

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Dec. 18, 1981.

H. Norwood Pearce, Columbus, Ga., for defendants-appellants.

Frank K. Martin, Columbus, Ga., for Chesser.

Samuel A. Wilson, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before HILL, VANCE and HATCHETT, Circuit Judges.

VANCE, Circuit Judge:

Bobby Gene Chesser and Samuel B. Hewitt appeal their convictions after trial by jury of aiding and abetting the use of an explosive to commit a felony in violation of 18 U.S.C. §§ 2, 844(h).[1] Hewitt also was convicted of two counts of mail fraud in violation of 18 U.S.C. § 1341.

Hewitt owned an interest in the Village Grocery, a grocery store located in Columbus, Georgia. Due in part to racial tension in the community, the Village Grocery began to experience financial difficulty. On August 12, 1979 the Village Grocery was partially destroyed by fire. Hewitt signed a proof of loss form which he delivered to his insurer through the United States mails. He received a check from the insurance company through the mails for over $5,800.

In early May, 1979 Hewitt stopped by Chesser's place of business, the Big "B" Barbecue, and talked with Chesser, Roger

---

1. Title 18 of the United States Code, section 844 provides in pertinent part:

 (h) Whoever—

 (1) uses an explosive to commit any felony which may be prosecuted in a court of the United States, or

 (2) carries an explosive unlawfully during the commission of any felony which may be prosecuted in a court of the United States,

shall be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than five years nor more than twenty-five years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of such person or give him a probationary sentence.

Bedsole, Larry Crook and Richard Smith. Hewitt complained that the situation at the Village Grocery was becoming increasingly difficult due to racial tension in the neighborhood. Chesser proposed that Crook and Bedsole burn down the Village Grocery and suggested that Hewitt "straighten out his insurance on the business." Crook and Bedsole agreed to set the fire for $1,000. Later that evening Chesser, Hewitt, Crook, Bedsole and Richard Smith drove to the Village Grocery. At this time they discussed the preferred means of destroying the store.

In late July, 1979 there was a serious racial incident at the Village Grocery. Afterwards Hewitt contacted Bedsole and directed him to set the fire, saying that the fire would be blamed on the racial incident. Bedsole and Hewitt traveled to the Village Grocery to determine the best means of destroying the building. Hewitt paid him $300 and promised to pay an additional $700 when the job was complete. Bedsole subsequently contacted Jerry Eugene Smith who agreed to set the fire for $500.

On late Saturday night and early Sunday morning, August 12, 1979, Smith and John Braswell purchased gasoline to set the fire. They proceeded to the Village Grocery and waited until the neighborhood was deserted. Smith then climbed to the roof of the building and poured ten gallons of gasoline down the roof vent into the building. He lighted the fire with the aid of a homemade delayed ignition device[2] and left the scene. Subsequently there was an explosion that blew out the windows of the Village Grocery. The ensuing fire was retarded by the building's sprinkler system and was extinguished by the fire department.

Hewitt paid Bedsole the remaining $700 but complained that the fire was inadequate. Hewitt subsequently arranged to collect the insurance which is the basis of his mail fraud conviction.

At trial, both Hewitt and Chesser denied that any conversation regarding a fire at the Village Grocery had ever taken place at the Big "B" Barbecue. They presented extensive testimony concerning the racial problems in the neighborhood surrounding the Village Grocery in an attempt to establish that the fire was a result of those racial problems rather than part of a scheme to defraud Hewitt's insurer. Much of Hewitt and Chesser's case was devoted to impeaching the government witnesses who had received various degrees of immunity in connection with their testimony.

In this court Chesser presents five grounds of error and Hewitt advances two.[3] None warrant reversal of their convictions.

## I

Chesser argues that the trial court erred in denying his motion for judgment of acquittal at the close of the government's case. The standard of review as to sufficiency of the evidence is whether a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Rodriguez*, 654 F.2d 315, 317 (5th Cir. 1981); *United States v. Kelley*, 630 F.2d 302, 303 (5th Cir. 1980). In conducting that review, we view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). We also must accept all credibility choices that tend to support the jury's verdict. *United States v. Kelley*, 630 F.2d at 303; *United States v. Staller*, 616 F.2d 1284, 1292 (5th Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980).

Chesser was charged with aiding and abetting the use of an explosive to commit

---

2. The ignition device consisted of a cigarette inserted into a matchbox which was suspended from the roof by a piece of thread tied to a pencil placed across a vent on the roof. The cigarette served as a slow fuse that ignited the matches which burned the thread and then fell onto the gasoline on the floor below.

3. Hewitt specifically alleges two errors and then attempts to adopt Chesser's arguments with respect to five other alleged errors. None of the arguments that Hewitt seeks to adopt would warrant reversal of his conviction.

a federal crime in violation of 18 U.S.C. §§ 2, 844(h). Taken in the light most favorable to the government, the evidence shows that Chesser proposed to Hewitt that Crook and Bedsole burn down the Village Grocery and suggested to Hewitt that he "straighten out his insurance" on the grocery. When Crook and Bedsole agreed to set the fire, Chesser and Hewitt accompanied them to the Village Grocery. Further it appears that Bedsole hired Jerry Smith to set the fire and that Smith performed this job with the help of John Braswell by the use of gasoline and a homemade ignition device.

■ Chesser contends that his involvement in the chain of events leading to the explosion at the Village Grocery was merely episodic and does not support the conclusion that he is guilty of aiding and abetting the violation of section 844(h). We disagree. To convict a defendant of aiding and abetting an offense, the government need not show that the defendant "participated in every phase of the criminal venture." *United States v. Diecidue*, 603 F.2d 535, 557 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980); *United States v. Beck*, 615 F.2d 441, 449 (7th Cir. 1980). Rather, the government must show that the "defendant was associated with the criminal venture, participated in it as something he wished to bring about, and sought by his action to make it succeed." *United States v. Martinez*, 555 F.2d 1269, 1272 (5th Cir. 1977). To prove association, the evidence must show that the defendant shared the criminal intent of the principal. To prove participation, the evidence must show that the defendant committed an overt act designed to aid in the success of the venture. *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978). In this case, Chesser shared in the criminal intent to use an explosive to commit a federal felony because it was Chesser who originally counseled Hewitt to destroy the Village Grocery and fraudulently obtain insurance proceeds. *See United States v. Evans*, 572 F.2d 455,

482 (5th Cir.), *cert. denied, Gent v. U. S.,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). Although Chesser's advice was gratuitously rendered, it is clear that a defendant need not have a financial stake in the criminal venture to be convicted of aiding and abetting. *United States v. Harris*, 441 F.2d 1333, 1336 (10th Cir. 1971); W. LaFave & A. Scott, *Criminal Law* 508 (1972).

Chesser further participated in the criminal venture through a number of overt acts. In addition to getting the venture on track by counseling Hewitt to destroy the grocery, he significantly facilitated the commission of the crime by personally cementing the connection between Hewitt and Bedsole for the purpose of committing the offense.

■ Chesser complains at length that the evidence against him consists largely of the testimony of Bedsole and Crook, two convicted felons testifying with immunity.[4] As ably pointed out by the court in *United States v. Tiche*, 424 F.Supp. 996, 1000–01 (W.D.Pa.), *aff'd mem.*, 564 F.2d 90 (3d Cir. 1977), judgment of acquittal in a case involving section 844(h) is not required because the government's case includes testimony by "an array of scoundrels, liars and brigands." *See also United States v. Parker*, 586 F.2d 422, 429 (5th Cir. 1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979). The jury was free to disbelieve the two government witnesses whose faults were exhaustively catalogued by the attorneys for both Hewitt and Chesser. Furthermore, the trial judge fully instructed the jury on the degree of suspicion they should entertain when considering the testimony of accomplices who testify with immunity. *See United States v. Darland*, 659 F.2d 70, 72 (5th Cir. 1981); *Government of Canal Zone v. Thrush G. (Garces)*, 603 F.2d 1118, 1120 (5th Cir. 1979); *Tillery v. United States*, 411 F.2d 644, 646–47 (5th Cir. 1969). By bringing back a verdict of guilty, however, the jury found that the testimony of Bedsole and Crook was credi-

---

**4.** The fact that Bedsole and Crook had been convicted of crimes and were testifying with immunity was brought out by the government on direct examination and by the defense attorney on cross-examination.

ble. Because the testimony was not incredible as a matter of law, we must accept this determination by the jury. *United States v. Palacios*, 612 F.2d 972, 973 (5th Cir. 1980); *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978).

## II

Chesser makes two interrelated assertions regarding his contention that the trial violated his double jeopardy rights under the fifth amendment. To sort these out, it is necessary to describe the procedural history of this case in greater detail.

Chesser was charged with explosion-related offenses in two separate indictments, 80–601–COL (601) and 80–602–COL (602). The 601 indictment charged Chesser with aiding and abetting the use of an explosive to destroy a different building,[5] and with mail fraud in the collection of insurance proceeds on that building. Chesser was the only defendant charged in the 601 indictment. The 602 indictment charged Chesser and Hewitt with the offenses of which they were found guilty in this case.

The trials in 601 and 602 were scheduled to take place consecutively. The 601 trial lasted from September 10, 1980 to September 15, 1980. After the jury retired in that case to consider its verdict, jury selection began in the 602 trial.[6]

At the beginning of the trial in 602, Chesser's counsel moved for a continuance until the jury in 601 returned a verdict. He contended that an acquittal in 601 would bar prosecution in 602 by collateral estoppel. Chesser's counsel submitted no supporting documents as evidence of this contention and the trial judge dismissed the motion for continuance out of hand. Chesser's attorney did not seek a stay of proceedings from this court.

Soon thereafter, the jury in 601 acquitted Chesser. Chesser moved to dismiss 602 on collateral estoppel-double jeopardy grounds at the close of the evidence. Again, counsel submitted no evidence in support of the

motion. The judge denied the motion, and Chesser was ultimately convicted.

On appeal in 602, Chesser asserts two grounds of error. First, the trial judge should have granted the continuance, and second, the judge should have granted the motion to dismiss on double jeopardy grounds.

Even if we were to agree with Chesser that the trial judge should have granted the continuance, it would have no bearing on the outcome of this appeal. Because we find that Chesser's double jeopardy claim is meritless, the denial of the motion for continuance did not result in any prejudice that would warrant reversal of his conviction.

The substance of Chesser's double jeopardy argument is as follows: the government in the 601 trial attempted to prove that Chesser aided and abetted Bedsole, Crook and others in the destruction of property to collect insurance fraudulently. By acquitting Chesser the jury in 601 necessarily found that he did not associate with Bedsole and Crook for criminal purposes. The government is therefore collaterally estopped from attempting to prove in 602 that Chesser aided and abetted Bedsole and Crook in the destruction of the Village Grocery.

■ Chesser's double jeopardy claim cannot prevail on the record of this case. In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court articulated the test for determining whether an acquittal at one trial bars the government from prosecuting the defendant in another trial on a separate charge:

> whether a rational jury could have grounded its verdict [in the first trial] upon an issue other than that which the defendant seeks to foreclose from consideration [in the second trial].

*Id.* at 444, 90 S.Ct. at 1194. To bar prosecution, it must appear that the fact which the defendant seeks to foreclose was necessarily determined in his favor in the first trial,

---

5. The building involved in 601 was Chesser's Hamilton Road Bar-B-Que.

6. The same trial judge, Honorable Robert Elliot, presided over both trials.

*United States v. De La Torre*, 639 F.2d 245, 248 (5th Cir. 1981); *United States v. Lee*, 622 F.2d 787, 790 (5th Cir. 1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981), and that the finding of that fact is inconsistent with a finding of guilt in the second trial, *United States v. Lee*, 622 F.2d at 790; *United States v. Wilder*, 463 F.2d 1263, 1267 (D.C.Cir.1972).

▆▆▆ While Chesser has argued that the government is barred from prosecuting him because of collateral estoppel, he has produced no evidence to support his assertion in the trial court or in the record on appeal. It is, however, his obligation to provide such evidence. In advancing a collateral estoppel defense the defendant has the burden of persuasion.[7] *United States v. Mock*, 640 F.2d 629, 631 n.1 (5th Cir. 1981); *United States v. Giarratano*, 622 F.2d 153, 156 n.4 (5th Cir. 1980).[8] Chesser's failure to sustain that burden by providing this court with convincing and competent evidence prevents us from granting relief. *United States v. Giarratano*, 622 F.2d at 156 n.4; *United States v. Lasky*, 600 F.2d at 769; *United States v. Tierney*, 424 F.2d 643, 645 (9th Cir.), *cert. denied*, 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970). *See also* Fed.R. App.P. 10(b).

We note that it is extremely unlikely under any state of the record on appeal or under any allocation of the burden of persuasion that Chesser could succeed in showing that his prosecution in 602 should be collaterally estopped. Typically, the court will find that prosecution is barred by collateral estoppel when the crime of which the defendant was acquitted in the first trial and the crime with which defendant is charged in the second trial share a "unity of time and place" and some issue of fact, such as identity, which is essential to a finding of guilt. *See, e. g., Ashe v. Swenson*, 397 U.S. at 436, 90 S.Ct. at 1189 (six simultaneous robberies, issue of identity); *United States v. Griggs*, 651 F.2d 396 (5th Cir. 1981) (two consecutive attempts to pass counterfeit bills, issue of knowledge); *United States v. Leach*, 632 F.2d 1337 (5th Cir. 1980) (simultaneous vote-buying and campaign contribution schemes, issue of participation); *McDonald v. Wainwright*, 493 F.2d 204 (5th Cir. 1974) (breaking and entering with intent to commit rape and rape, issue of consent).

This case does not fall into the typical pattern of collateral estoppel cases. The criminal acts alleged in the two indictments involved different buildings and took place months apart. All of the testimony against Chesser in this case related to meetings that occurred long after the crime alleged in the first indictment had taken place. It is difficult to imagine any finding of fact presumably made in Chesser's favor at the first trial that would militate against a finding of guilt in the second trial, much less bar prosecution altogether. In short, Chesser's double jeopardy assertion appears to be totally lacking in merit. *Cf. United States v. Griggs*, 651 F.2d at 399–400; *Douthit v. Estelle*, 540 F.2d 800 (5th Cir. 1976); *Lynch v. Henderson*, 469 F.2d 1081 (5th Cir. 1972); *Middlebrooks v. United States*, 457 F.2d 657

---

**7.** The allocation of the burden of persuasion to the defendant in a collateral estoppel double jeopardy case differs from the allocation scheme which applies to "same offense" double jeopardy claims. In the latter class of claims, after the defendant produces evidence which establishes a prima facie non-frivolous claim, the burden of persuasion shifts to the government. *United States v. Futch*, 637 F.2d 386, 389 (5th Cir. 1981); *United States v. Tammaro*, 636 F.2d 100, 103 (5th Cir. 1981); *United States v. Stricklin*, 591 F.2d 1112, 1117–18 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).

We note that in this case where Chesser has produced *no* competent evidence to support his double jeopardy claim, that claim would fail even if it were based upon a "same offense" theory.

**8.** *Accord, United States v. Clark*, 613 F.2d 391, 400 (2d Cir. 1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *United States v. Lasky*, 600 F.2d 765, 769 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Barket*, 530 F.2d 181, 188 (8th Cir. 1975), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976). *Cf. United States v. Inmon*, 568 F.2d 326, 331 n.5 (3d Cir. 1977), *cert. denied*, 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 79 (1979) (notes that many courts place burden in collateral estoppel cases upon defendant).

(5th Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 55, 34 L.Ed.2d 90 (1972) (cases in which second crime occurred in a different factual context from first, and no collateral estoppel operated to bar prosecution).

### III

Chesser next complains that the trial court committed reversible error in denying a brief continuance between Chesser's two consecutive trials to allow his counsel to prepare his defense better.

Deciding whether to grant a continuance lies in the discretion of the trial judge. *United States v. Magana-Arevalo*, 639 F.2d 226, 229 (5th Cir. 1981); *United States v. Tilton*, 610 F.2d 302, 305 (5th Cir. 1980). To overturn a federal conviction on the ground that the trial judge denied a continuance, the defendant must demonstrate that the denial was an abuse of discretion that resulted in specific prejudice to the defendant's case. *United States v. Jimenez-Diaz*, 659 F.2d 562, 566 (5th Cir. 1981); *United States v. Satterfield*, 644 F.2d 1092, 1095–96 (5th Cir. 1981); *United States v. Henderson*, 588 F.2d 157, 159 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979). Chesser has failed to specify prejudice of any substantial proportions, and hence has failed to establish that the trial court committed reversible error by denying his motion for continuance.[9]

### IV

The most damning testimony against Chesser was by Crook and Bedsole, who related remarks allegedly made by Chesser concerning the destruction of the Village Grocery. On appeal, Chesser claims that this testimony was improperly admitted because the trial judge did not make a

determination that there was a conspiracy between Chesser and Bedsole or between Chesser and Crook. Such a determination, according to Chesser, is required by our decision in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

Chesser's legal argument reflects a misconception about our *James* decision of a type that is becoming disturbingly prevalent in recent criminal cases. At the bottom line, *James* stands only for the proposition that for testimony to be admissible under the "coconspirator exception" to the hearsay rule, Fed.R.Evid. 801(d)(2)(E),[10] it must appear by the close of the evidence that the government has shown by a preponderance of the evidence, independent of the declarant's statements, that: a conspiracy existed; the defendant and the declarant were members of that conspiracy; and the statements were made during the course and in furtherance of the conspiracy. *See United States v. Horton*, 646 F.2d 181, 185 (5th Cir. 1981); *United States v. Ricks*, 639 F.2d 1305, 1308–09 (5th Cir. 1981); *United States v. Ocanas*, 628 F.2d 353, 359–60 (5th Cir. 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981); *United States v. James*, 590 F.2d at 582–83.

The significance of our *James* decision does not extend beyond the coconspirator exception of Rule 801(d)(2)(E). *United States v. Wilson*, 657 F.2d 755, 759 (5th Cir. 1981). The testimony which Chesser seeks to challenge in this case did not contain statements by an alleged coconspirator of Chesser, but rather of Chesser himself. The testimony was properly received into evidence as an admission under Rule 801(d)(2)(A),[11] and Chesser's argument based upon *James* is unfounded.

---

9. Chesser's attorney had known that the two cases were scheduled to be tried consecutively but made no complaint until the day of trial in 602.

10. Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if:

 [t]he statement is offered against a party and is ... (E) a statement by a coconspirator

of a party during the course and in furtherance of the conspiracy.

11. Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if:

 [t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity ....

## V

Chesser finally asserts that the trial court committed reversible error by refusing to give Chesser's proposed jury instruction which stated that part of the definition of "incendiary device" contained in section 232(5)(C) of title 18 of the United States Code is that the device be capable of being carried or thrown by one individual acting alone. For the reasons outlined below, we find that Chesser's assertion is meritless.

Chesser was convicted under section 844(h) of the criminal code, which prohibits the use of an explosive in the commission of a federal felony.[12] The definition of explosive corresponding to section 844(h) is contained in section 844(j).[13] That section delineates three kinds of explosives: first, articles like gunpowder and blasting material that are commonly used as explosives; second, "explosive or incendiary devices within the meaning of paragraph 5 of [18 U.S.C. § 232]";[14] and third, compounds, mixtures or devices which contain oxidizing or combustible units that may cause an explosion under enumerated circumstances. *See generally United States v. Hepp*, 656 F.2d 350 (8th Cir. 1981).

At Chesser's trial, Jerry Eugene Smith, the actual perpetrator of the explosion at the Village Grocery, testified that he, with the assistance of Roger Braswell, used a delayed ignition device and ten gallons of gasoline to cause the explosion. The government produced two expert witnesses. One opined that the delayed ignition device used in connection with the gasoline constituted an "incendiary device" included among the second kind of explosive defined in section 844(j). The other expert testified that the gasoline was a chemical compound or mixture capable of causing an explosion and was thus included among the third kind of explosive defined in section 844(j).

Chesser's theory is that an incendiary device under section 232(5)(C) must be a device that is capable of being used by one individual acting alone. Because Smith acted with the help of a second person, Braswell, Chesser contends that Smith did not use an incendiary device within the meaning of section 232(5)(C). On appeal, Chesser asserts that the failure of the trial court to make his proposed "one individual instruction" prejudiced his defense in that it prevented the jury from finding that the Village Grocery was not destroyed by an "incendiary device" because the device used by Smith required the cooperation of both Smith and Braswell.

This court cannot reverse a trial court for failure to give requested instructions unless those requested instructions are themselves an accurate statement of the law. *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir. 1981); *United States v. L'Hoste*, 609 F.2d 796, 805 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980); *United States v. Mardian*, 546 F.2d 973, 982–83 (D.C.Cir.1976). A simple reading of section 232(5)(C) reveals that Chesser's instruction is inaccurate. That paragraph defines "explosive or incendiary device" as "any incendiary bomb or grenade, fire bomb, or similar device, *including*" breakable containers containing flammable liquid that have a wick and that can be thrown by one person acting alone (emphasis supplied). The purpose of Con-

12. The statute is part of Title XI of the Organized Crime Control Act of 1970 which establishes federal regulation over explosives. *See generally United States v. Womack*, 654 F.2d 1034 (5th Cir. 1981).

13. Title XI contains two separate definitions of the term "explosive" contained in 18 U.S.C. § 841(d) and 18 U.S.C. § 844(j) corresponding respectively to the regulatory and criminal portions of that title.

14. Title 18, United States Code, section 232, paragraph five provides:

The term "explosive or incendiary device" means (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

gress in spelling out one class of explosive items is to assure that portable explosives like Molotov cocktails do not escape the ambit of federal regulation.[15] However, Chesser's instruction would limit the application of section 232(5)(C) to items which that paragraph only seeks to specifically include. In our view proper construction of the statute does not justify such a limitation.

Chesser does not object to any other portion of the jury instructions.[16]

## VI

Hewitt contends that the trial court committed reversible error in refusing to grant his motions for severance. Specifically, Hewitt argues that evidence submitted to the jury regarding Chesser's past criminal activities made it impossible for the jury to consider the question of Hewitt's guilt separately from that of Chesser.[17]

 This court has stated that in ruling on a motion for severance, "the trial judge must weigh the likelihood of prejudice against the interest of judicial economy." The question of severance "is left to the discretion of the trial judge, and his discretion will be disturbed only where the defendant can show 'specific and compelling prejudice.'" *United States v. Wolford*, 614 F.2d 516, 518 (5th Cir. 1980) (citation omitted). This court has specifically held that the introduction of evidence regarding a codefendant's past criminal record does not in itself require severance. *United States v. De La Torre*, 639 F.2d at 249. In this case, Hewitt has failed to carry his burden of showing that the introduction of evidence regarding Chesser's criminal record was so prejudicial that the trial judge's refusal to grant severance was reversible error.

## VII

 Finally, Hewitt alleges that the trial judge committed reversible error in allowing the prosecutor to cross-examine one of Hewitt's reputation witnesses improperly. At trial, Hewitt called four reputation witnesses, each of whom testified to Hewitt's good reputation in the community. The prosecution cross-examined each of the four witnesses by asking them whether they had heard that Hewitt had been indicted, arrested, and was to go to trial in Muscogee County Superior Court, on two counts of theft of air conditioning units. The first three reputation witnesses testified that they had heard of the impending trial, but that their assessment of Hewitt's reputation in the community was unaltered. The fourth reputation witness, Diane Gibbons, stated that she had not heard of the impending trial. The prosecuting attorney then asked, "If you heard that would your testimony that his reputation is good, would that still be your testimony?" Gibbons answered that her assessment of Hewitt's reputation would remain unchanged.

Hewitt does not deny that it was proper to ask the reputation witnesses whether they had heard about his impending trial in Muscogee County. The Supreme Court established long ago in *Michelson v. United States*, 335 U.S. 469, 478–79, 69 S.Ct. 213, 219–220, 93 L.Ed. 168 (1948), that a reputation witness for the defense may be cross-examined as to whether he has heard of certain facts that tend to reflect negatively on defendant's reputation. This line of cross-examination is allowed for the very specific purpose of impeaching the witness' credibility. If the reputation witness has not heard of a fact that is likely to have

---

**15.** According to the House Report, "[u]nder this part of the title the definition of explosives is broadened to include incendiary devices such as 'Molotov cocktails.'" H.R.Rep.No.91–1549, 91st Cong., 2d Sess., *reprinted in* [1970] U.S. Code Cong. & Ad.News 4007, 4011.

**16.** Specifically, Chesser does not object to the judge's instruction that gasoline can be used as an explosive within the meaning of section

844(j). We do not decide that issue here. *Compare United States v. Birchfield*, 486 F.Supp. 137, 138–39 (M.D.Tenn.1980) (gasoline is not an explosive for purposes of section 844(j)) *with United States v. Hepp*, 656 F.2d 350, 352–53 (8th Cir. 1981) (natural gas can be an explosive for purposes of section 844(j)).

**17.** Chesser had pleaded guilty to two gambling-related felony charges in 1972.

caused a negative community impression of the defendant, the government has shown that the witness' knowledge of defendant's reputation is shallow and unreliable. If the reputation witness has heard of this fact but nevertheless testifies that the defendant's reputation is good, then the government has shown that the witness is either lying or is applying a lowered standard by which he assesses the defendant's good reputation. *See Michelson v. United States*, 335 U.S. at 479, 483, 69 S.Ct. at 220–222; *United States v. Curry*, 512 F.2d 1299, 1305 (4th Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); C. McCormick, *Evidence* 457 n.74 (2d ed. 1972).

In light of the limited purpose for which *Michelson*-type cross-examination is appropriate, it is clear that the hypothetical question posed by the prosecuting attorney to Hewitt's reputation witness was highly improper. The government had already shown that Gibbons knew little of Hewitt's reputation in the community by exposing her ignorance of his pending trial. After thus impeaching her credibility as a reputation witness, the government attempted to conscript her as an expert on Hewitt's reputation by asking her what the community would think if it had heard of the theft charges. This question serves no legitimate purpose and, at the very least, was irrelevant.[18]

It remains to be determined, however, whether this improper cross-examination resulted in prejudice to Hewitt's case so as to warrant reversal. Fed.R.Crim.P. 52(a); *Michelson v. United States*, 335 U.S. at 480, 69 S.Ct. at 220; *United States v. Candelaria-Gonzalez*, 547 F.2d 291, 294 (5th Cir. 1977); *United States v. Curtis*, 644 F.2d 263, 269–70 (3d Cir. 1981). For several reasons, we conclude that it did not. First, the hypothetical question did not ask the witness to assume the existence of facts that the government could not substantiate. To the contrary, the prosecuting attorney had made a timely proffer of evidence to the judge which established that Hewitt was awaiting trial on charges of theft. *See Michelson v. United States*, 335 U.S. at 480–81 & n.17, 69 S.Ct. at 220–221. *Cf. Gross v. United States*, 394 F.2d 216, 220 (8th Cir. 1968), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970) (conviction reversed because no basis for cross-examination established). Also, the question did not ask the witness to assume the guilt of Hewitt in the matter for which he was standing trial, and therefore did not violate the presumption of innocence to which Hewitt was entitled. *See United States v. Candelaria-Gonzalez*, 547 F.2d at 294. Finally, the hypothetical question did not cause Hewitt's reputation witness to alter her evaluation of Hewitt's reputation in the community. *See United States v. Dovalina*, 525 F.2d 952, 957 (5th Cir.), *cert. denied*, 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 197 (1976); *United States v. Curtis*, 644 F.2d at 270.[19]

AFFIRMED.

---

18. *See, e. g., Gross v. United States*, 394 F.2d 216, 221 (8th Cir. 1968), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970). This conclusion is not altered by the adoption of Fed.R.Evid. 405. That rule changes preexisting practice by allowing the defendant to prove his good character by means of reputation or opinion evidence. Advis.Comm. Notes, Fed.R. Evid. 405. The fact that the defendant is free to prove his good character by means of opinion evidence does not mean that the government is free to impeach the defendant's reputation witnesses by use of hypotheticals, a means normally appropriate for impeachment of expert opinion testimony. *United States v. Curtis*, 644 F.2d 263, 268 (3d Cir. 1981).

19. The government reads our decision in *United States v. Dovalina*, 525 F.2d 952 (5th Cir.), *cert. denied*, 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 197 (1976), to hold that whenever a reputation witness responds to an improper hypothetical question with an answer that reaffirms his favorable testimony, the defendant necessarily suffers no prejudice. We reject that reading of *Dovalina*. In several cases, a defendant's conviction has been reversed because of improperly posed hypotheticals despite the fact that the reputation witness refused to change his testimony. *See, e. g., United States v. Candelaria-Gonzalez*, 547 F.2d 291, 293–94 & n.3 (5th Cir. 1977); *Gross v. United States*, 394 F.2d at 220–21. Our decision in *Dovalina* establishes only that the response of the reputation witness to the improper hypothetical is one factor to be considered by the court in assessing prejudice. *United States v. Curtis*, 644 F.2d at 270.