[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 29, 2005
THOMAS K. KAHN
CLERK

No. 04-15107
Non-Argument Calendar

_____

D. C. Docket No. 03-00127-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER M. DEES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 29, 2005)**

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Christopher M. Dees appeals his jury conviction and sentence for conspiracy to possess with intent to distribute 5 or more kilograms of cocaine and 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)-(iii), and 846. He argues that (1) the evidence was insufficient to support the jury's verdict; (2) the district court erred by admitting evidence of his prior drug convictions under Fed.R.Evid. 404(b); and (3) the district court erred by failing to rule on and delete a two-level firearm enhancement when calculating his sentence. Dees also purports to adopt all arguments, points, and authorities cited by other appellants on "common issues," including any plain errors, while failing to state in any detail what those arguments might be. For the reasons stated more fully below, we affirm Dees's conviction and sentence.

Dees was indicted, along with eight co-conspirators, on one count of conspiracy to possess with intent to distribute five or more kilograms of cocaine and 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (iii), 846. Dees proceeded to trial where a jury convicted him for the offense as charged in the indictment.

Prior to trial, the government filed two notices of enhancement pursuant to 21 U.S.C. § 851, indicating that Dees would be subject to an enhanced penalty under 21 U.S.C. §§ 841(b)(1)(A)(ii)-(iii) because Dees's criminal record included

two Florida state convictions for possession of a controlled substance, both of which were felonies under Florida law. The government also filed a notice of its intent to introduce at trial, pursuant to Fed.R.Evid. 404(b), the circumstances surrounding three of Dees's previous arrests, two of which led to the convictions outlined in the government's notice of penalty enhancement.

Dees, after the jury had been empaneled, but before trial had begun, objected to the government's use of 404(b) evidence, arguing that the use of such evidence was inappropriate and prejudicial unless Dees took the stand and testified that he had never heard of cocaine and did not know what it was. The government responded that the use of 404(b) evidence helped prove intent and identification, regardless of whether Dees testified, and that it intended to reserve using the evidence of Dees's prior drug-related arrests until other evidence had been presented to connect the arrests to the facts of the case. The court reserved ruling on the issue until trial.

At trial, the government relied principally on the testimony of convicted co-conspirators. First, it called Jafari Williams, serving a 250-month sentence for conspiracy to distribute cocaine and crack cocaine. In addition, Williams had several other state felony convictions on his record. Williams's testimony established that he (1) knew Dees since childhood; (2) began dealing cocaine in

2001; (3) first received cocaine from Dees in the latter part of 2002, and continued to receive cocaine from him in quantities of 14 to 18 ounces, at a price of $14,000 for 18 ounces; (4) met with Dees regularly in the Warrington Village Apartments in Pensacola; (5) personally saw Dees engaged in selling and pushing cocaine and crack cocaine, and even shared customers with Dees; (6) occasionally would supply Dees's customers and Dees would supply Williams's customers if either one ran out of cocaine; (7) rode in automobiles with Dees while Dees was selling cocaine and supplied Dees with cocaine; (8) witnessed Dees "cook" cocaine powder into cocaine base; (9) taught Dees how to "cut" his cocaine with baking soda in order to sell more; (10) shared a motel room with Dees, and had been in Dees's house when Dees would package his cocaine for distribution; and (11) saw Dees with more than one kilogram of cocaine at least nine times.

Williams admitted that he lied to the police about a hotel room key found in his pocket at the time of his arrest, and went on to testify that the largest purchase that he and Dees discussed making together was a 30-kilogram buy for $150,000, which was never consummated. Instead, Dees sold Williams three kilograms of cocaine for $66,000. Furthermore, both Williams and Dees paid another co-conspirator, Joseph Grimsley, to "cook" the cocaine into cocaine base because Grimsley was an "expert." Williams was also able to identify bags that Dees used

4

to wrap and package his cocaine. Williams further testified that Dees, on several occasions, left powder cocaine for Williams to sell on his behalf. Ultimately, Williams testified that, over the course of the conspiracy, Dees sold him about 12 kilograms of cocaine, some of which was seized at the time Williams was arrested.

Dees conducted a thorough cross-examination of Williams, pointing out to the jury that Williams's statements to law enforcement regarding his drug dealings came only after he faced a life sentence, and Williams admitted that his testimony was offered in order to reduce his sentence. Dees further insinuated that Williams might have had a "falling out" with him, providing a motive for incriminating Dees.

The government also called Earl Hudgins, who was arrested the same day as Williams, and who is serving a 250-month sentence for federal drug charges. Hudgins testified that he bought crack cocaine from Dees and Williams and eventually purchased powder cocaine from Dees in order to "cook" it himself and make a better profit upon resale. He further testified that he only bought powder cocaine from Dees when Williams had run out, but that he probably bought a total of 60 cookies of cocaine base directly from Dees. Hudgins also indicated that the most cocaine powder he ever saw Dees handle was three kilograms involved in a sale to Williams. Like Williams, Hudgins also used Grimsley as his "cook," and

5

testified that he saw Dees at Grimsley's house, and that Dees was there to "cook" cocaine.

As he did with Williams, Dees cross-examined Hudgins thoroughly, exposing his criminal record, pointing out possible inconsistencies in testimony, implying that Hudgins's testimony was offered solely to avoid a sentence of life imprisonment, and averring that there may have been a "falling out" between Hudgins and Dees, which Hudgins denied.

To further prove its case, the government called eight more of Dees's co-conspirators, all of whom had been convicted of the same charge as the one facing Dees, and all of whom had either received or were awaiting sentencing. Each co-conspirator testified that he either bought or sold cocaine or cocaine base from Dees, and each co-conspirator was subject to the same type of cross-examination as were Williams and Hudgins, i.e, each had a criminal record, a drug conviction, and the possibility of a reduced sentence or a reduced sentence for testifying. Therefore, the backbone of the government's case against Dees was formed through the testimony of Dees's convicted co-conspirators.

Mid-trial, the government again indicated to the court that it wished to present 404(b) evidence. It argued that the introduction of the evidence, showing two incidents where Dees was found in possession of cocaine base and packaging

6

suitable for distribution, would help prove intent and negate any mistake. Dees argued that the evidence was being offered to prove Dees's propensity, not intent, and that the government had already proffered the testimony of ten witnesses, giving it a strong case and making the introduction of the prior acts highly prejudicial and unnecessary. He reiterated his earlier argument that Dees would have to specifically refute any connection to, or knowledge of, cocaine before the government's evidence would be admissible. The court again reserved ruling, and eventually found that the 404(b) evidence would "be permitted for the purpose of determining state of mind or intent and whether [Dees] acted in accordance with a plan and not by mistake, and I'll so inform the jury."

Dees then stipulated to two prior felony convictions for possession of cocaine base, one on March 2, 1999, the other on July 31, 2000. The jury was informed that it could not consider the prior convictions when determining whether Dees committed the crimes with which he was presently charged.

After both sides had closed their cases, Dees moved for a judgment of acquittal, arguing that, if the government's evidence proved a conspiracy, it proved that the conspiracy was for the government's witnesses to receive lesser sentences by implicating Dees instead of some unknown third person in the conspiracy. He argued that the government's witnesses had a clear motive to get out of their

7

sentences, had the opportunity to speak with one another about the case, and were continuing to protect someone at the expense of Dees. The court denied Dees's motion, finding that it was the jury's duty to determine the credibility of the witnesses, and the evidence needed to be viewed in a light most favorable to the government.

In its instructions to the jury, the court stated that the jury could believe or disbelieve any witness, suggesting to the jury that it consider, among other things, whether there was any evidence to suggest a witness testified falsely, whether the witness had been convicted of a felony, and it specifically instructed the jury that witnesses seeking to gain favorable treatment by testifying or by plea bargaining might have reasons to make a false statement, and, therefore, their testimony should be viewed with more caution. The jury was further instructed that, to prove Dees conspired, the government had to show (1) two or more persons in some way or manner, came to a mutual understanding to try and accomplish a common and unlawful plan as charged in the indictment, and (2) that the defendant, knowing the unlawful purpose of the plan, wilfully joined it. The jury found Dees guilty as charged.

A pre-sentence investigation report ("PSI") calculated Dees's base offense level at 38, pursuant to U.S.S.G. § 2D1.1(c)(1), based on a drug quantity

calculation of well in excess of 30,000 kilograms of marijuana. A two-level enhancement was added pursuant to U.S.S.G. § 2D1.1(b)(1) based on the possession of a weapon by two of Dees's co-conspirators, which the PSI found to be reasonably foreseeable given the large sums of cash and cocaine involved. No other enhancements or reductions were made, giving Dees a total offense level of 40. Dees had eight criminal history points, placing him at criminal history category IV, providing for a guidelines range of 360 months' imprisonment to life. However, because Dees was subject to two prior felony drug convictions, he faced a minimum mandatory term of life imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A)(ii)-(iii).

Dees filed several objections to the PSI, the only one relevant to his present appeal being a challenge to the two-level enhancement for use of a firearm during the conspiracy. At the sentencing hearing, however, the district court asked Dees if any of his objections, including his objection to the firearm enhancement, were not trumped by the statutorily enhanced sentence. Dees replied that his objections were indeed mooted by the statutory enhancement, and sought only to preserve those objections made to the PSI for the purposes of appeal. Thus, the district court heard no argument regarding Dees's objections, nor did it make any rulings as to the findings of the PSI, proceeding directly to whether the government had

9

met is burden of proof regarding the statutory enhancement.

Dees neither confirmed nor denied that he had two prior felony drug convictions, and the government put witnesses on the stand, ultimately linking the convictions of record to Dees through his fingerprints. Based on Dees's two prior felony drug convictions, and his federal conviction in the instant case under 21 U.S.C. §§ 841(a)(1), 846, the district court sentenced Dees, as it was required, to life imprisonment.

## I.  Sufficiency of the Evidence

On appeal, Dees first argues that there was insufficient proof to convict him for conspiracy to possess with intent to distribute cocaine and cocaine base because the only evidence presented by the government linking Dees to a conspiracy was the tenuous testimony of co-conspirators. He argues that there was no direct evidence incriminating him, and that the witnesses who testified against him spoke about the case amongst themselves and had motives to provide false statements in return for reduced sentences. Because no independent evidence corroborated the testimony of the witnesses, and because there was no discrepancy in the overall testimony of each witness, their testimony was likely fabricated, and Dees argues that the evidence was insufficient to convict him. Thus, he argues that his motion for judgment of acquittal should have been granted.

10

We review de novo whether the evidence was sufficient to support a conviction. United States v. Majors, 196 F.3d 1206, 1210 (11th Cir. 1999) (citation omitted). "In reviewing the sufficiency of the evidence to support the jury verdict, we view the evidence in the light most favorable to the government . . . all reasonable inferences and credibility choices are made in the government's favor." Id. "Accepting all reasonable inferences from the evidence which support the verdict, we will affirm the convictions if a reasonable fact-finder could have reached a conclusion of guilt beyond a reasonable doubt." Id.

Moreover, we review de novo the denial of a motion for judgment of acquittal, and the denial will be upheld if a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt, drawing all inferences in favor of the government. See United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001).

"To sustain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that (1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001). "It is not necessary to prove a defendant's participation in a criminal conspiracy by direct evidence." Id. "Instead, a common purpose and plan

11

may be inferred from a development and collocation of circumstances." Id. (quotation and citation omitted). "Although mere presence at the scene of a crime is insufficient to support a conspiracy conviction, presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." Id.

At trial, Jafari Williams testified that he (1) knew Dees since childhood; (2) began dealing cocaine in 2001; (3) first received cocaine from Dees in the latter part of 2002, and continued to receive cocaine from him in quantities of 14 to 18 ounces, at a price of $14,000 for 18 ounces; (4) personally saw Dees engaged in selling and pushing cocaine and crack cocaine, and even shared customers with Dees; (5) occasionally would supply Dees's customers and Dees would supply Williams's customers if either one ran out of cocaine; (6) rode in automobiles with Dees while Dees was selling cocaine and supplied Dees with cocaine; (7) witnessed Dees "cook" cocaine powder into cocaine base; (8) taught Dees how to "cut" his cocaine with baking soda in order to sell more; (9) shared a motel room with Dees, and had been in Dees's house when Dees would package his cocaine for distribution; and (10) saw Dees with more than one kilogram of cocaine at least nine times.

Williams further testified that the largest purchase that he and Dees

discussed making together was a 30-kilogram buy for $150,000, which was never consummated. Instead, Dees sold Williams three kilograms of cocaine for $66,000. Furthermore, both Williams and Dees paid another co-conspirator, Joseph Grimsley, to "cook" the cocaine into cocaine base because Grimsley was an "expert." Williams was also able to identify bags that Dees used to wrap and package his cocaine. Williams further testified that Dees, on several occasions, left powder cocaine for Williams to sell on his behalf. Ultimately, Williams testified that, over the course of the conspiracy, Dees sold him about 12 kilograms of cocaine, some of which was seized at the time Williams was arrested.

The government also called Earl Hudgins, who was arrested the same day as Williams, and who is serving a 250-month sentence for federal drug charges. Hudgins testified that he bought crack cocaine from Dees and Williams and eventually purchased powder cocaine from Dees in order to "cook" it himself and make a better profit upon resale. He further testified that he only bought powder cocaine from Dees when Williams had run out, but that he probably bought a total of 60 cookies of cocaine base directly from Dees. Hudgins also indicated that the most cocaine powder he ever saw Dees handle was three kilograms involved in a sale to Williams. Like Williams, Hudgins also used Grimsley as his "cook," and testified that he saw Dees at Grimsley's house, and that Dees was there to "cook"

13

cocaine.

As to both Williams and Hudgins, Dees conducted vigorous cross-examination, exposing their criminal records, pointing out possible inconsistencies in testimony, implying that their testimony was offered solely to avoid a sentence of life imprisonment, and averring that there may have been a "falling out" between Hudgins, Williams, and Dees, which the parties denied. Similar testimony regarding buying and selling cocaine and cocaine base and similar cross-examination was elicited from no less than eight other co-conspirators and government witnesses.

While Dees attacks the credibility and truthfulness of the government's witnesses, attributing to them high motives to lie, "[c]redibility determinations are the exclusive province of the jury." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). Indeed, as we have held, "judgment of acquittal . . . is not required because the government's case includes testimony by an array of scoundrels, liars and brigands." United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981). "The jury [is] free to disbelieve the . . . government witnesses whose faults were exhaustively catalogued by the attorneys . . . . Furthermore, the trial judge fully instructed the jury on the degree of suspicion they should entertain when considering the testimony. . . ." Id. (citations omitted).

14

As in Hewitt, by bringing back a verdict of guilty, the jury found the government's witnesses credible. Id. at 1385. Moreover, the court at Dees's trial specifically instructed the jury that it was free to disbelieve witnesses, and that it should take with caution the testimony of those who were testifying in hope of sentence reductions. (See R1-150 unnumbered). Instead, the jury believed the testimony establishing that Dees bought cocaine, "cooked" cocaine base, sold cocaine powder and cocaine base to others, shared customers with several different drug dealers, learned how to "cut" his cocaine from another co-conspirator (Williams), and consummated sales as high as three kilograms of cocaine for $66,000, and as many as 60 cookies of cocaine base to one buyer alone. We conclude that this was sufficient evidence for a reasonable juror to conclude, beyond a reasonable doubt, that Dees was a participant in a conspiracy to possess with intent to distribute cocaine and cocaine base, as charged in the indictment. Therefore, we conclude that the district court did not err by denying Dees's motion for judgment of acquittal, and the evidence, taken in a light most favorable to the government, was sufficient to support Dees's conviction.

## II. Admission of 404(b) Prior Convictions

Dees next argues that the district court abused its discretion by admitting into evidence two separate state felony convictions for possession of controlled

substances, both of which were outside the time scope of the charged conspiracy. He argues that the evidence was highly prejudicial and offered only to paint him as a drug user, not for motive, intent, or any other permissible purpose.

We review the district court's rulings on admission of evidence for an abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). "The abuse of discretion standard has been described as allowing a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989).

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Thus, extrinsic evidence of uncharged, criminal activities generally is considered inadmissible for proving that the defendant acted the same way in the charged offense, but is admissible if used for another purpose, such as to establish intent. Fed.R.Evid. 404(b). Even then, "[t]o be admissible, 404(b) evidence must (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act;

16

and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403."[1] United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000).

"'Evidence of prior drug dealings is highly probative of intent to distribute a controlled substance . . . .'" United States v. Cardenas, 895 F.2d 1338, 1344 (11th Cir. 1990) (quoting United States v. Hitsman, 604 F.2d 443, 448 (5th Cir. 1979)). This is true even if the prior offense involved a different type of drug than the drug in the charged offense. See United States v. Calderon, 127 F.3d 1314, 1331 (11th Cir. 1997) (holding a prior conviction for trafficking large quantities of marijuana relevant to the question of intent in charge of cocaine importation and distribution).

Here, it was not an abuse of discretion to permit the 404(b) evidence at trial. As to the first prong of the Chavez test, Dees pled not guilty, placing intent directly at issue. Under Calderon, a plea of not guilty in a drug conspiracy case alone arguably satisfies the government's 404(b) relevancy requirement. Calderon, 127 F.3d at 1332. Under the second prong (sufficient proof), Dees stipulated to the record convictions and the underlying arrests and reports; therefore, the acts were sufficiently proven. The jury, thus, was able to determine that the defendant

---

[3] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

17

committed the prior acts.  See Huddleston v. United States, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).

Finally, as to the question of prejudice, this Court has held that "a not guilty plea in a drug conspiracy case, such as we have here, makes intent a material issue and opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of a defendant's intent." Calderon, 127 F.3d at 1332.  Furthermore, where, as Dees argues here, the credibility of the government's witnesses is suspect, the need for 404(b) evidence is heightened.  Id. Additionally, as the government argues, any prejudicial effect to Dees was mitigated by the district court's instruction to the jury regarding the limited purpose and use of the 404(b) evidence.

Therefore, we conclude that the district court  did not abuse its discretion by admitting into evidence Dees's prior arrests and convictions for possession of controlled substances.

### III.  Dees's Two-Level Firearm Enhancement

Lastly, Dees argues that the district court erred by not ruling on and removing a two-level enhancement for possession of a firearm by a co-conspirator used to calculate his guidelines sentence, U.S.S.G. § 2D1.1(b)(1).  Dees concedes that the court thought the issue was trumped by the statutorily enhanced mandatory

18

life sentence, but argues that because Dees was not present during the possession of the firearm, and could not have reasonably foreseen its possession, this Court should remand for resentencing because the mention of firearms affects, inter alia, the determination of Dees's incarceration facility.

Pursuant to U.S.S.G. § 2D1.1(b)(1), a defendant's sentence is enhanced two levels if a dangerous weapon, including a firearm, is possessed. U.S.S.G. § 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id., (comment., n.3.).

We will assume, without deciding, that the district court should have heard argument from the parties concerning the application of § 2D1.1(b)(1) to Dees's sentence because any error in failing to make specific findings regarding or erroneously applying that section had no impact whatsoever on the sentence imposed. "[O]nce the court of appeals has decided that the district court misapplied the Guidelines, remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, [i.e.], that the error did not affect the district court's selection of the sentence imposed. Williams v. United States, 503 U.S. 193, 203, 112 S.Ct. 1112, 1120-21, 117 L.Ed.2d 341 (1992).

Here, the court was required, under 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)-(iii), to impose a life sentence because Dees had two prior felony drug convictions. See 21 U.S.C. § 841(b)(1)(A)(ii)-(iii) ("[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release.). Therefore, regardless of whether Dees should or should not have been subject to a weapon enhancement under the guidelines was irrelevant, as his sentence would have been life imprisonment either way. Therefore, we conclude that any error committed by the district court in failing to rule on the enhancement or ruling in favor of applying the enhancement was harmless.[2]

## IV. Dees's Adopted Arguments

---

[2] Dees argues in brief that resentencing is required because the mention of firearms has greater ramifications than just the two-level enhancement, i.e., that it is a factor in the determination of the incarceration facility. Dees offers no authority or citation for this novel proposition, and in any event, he did not argue this to the district court, and any review would be subject to plain error analysis. Under plain error review, Dees would have to demonstrate that the district court committed an error, obvious or plain under current law, that violated his substantial rights. See United States v. Cotton, 535 U.S. 625, 631. 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002). However, Dees cannot make such a showing because "inmates usually possess no constitutional right to be housed at one prison over another." Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989). Moreover, there is no precedent even suggesting that the district court was required to resolve the firearm-enhancement question where a mandatory term of life imprisonment was required, even if the facility of incarceration may have been altered. Finally, it is the Bureau of Prisons, acting at the direction of the United States Attorney General, not the Judiciary, that controls the placement of persons convicted of crimes against the United States. See 18 U.S.C. § 4042(a).

20

In his brief, Dees states that he adopts "all arguments, points, and authorities cited by other appellants on the common issues they share including any plain errors which occurred." Dees does not, however, indicate which appellants (or, indeed, that there are any others), nor does he direct us to which issues, if any, may be shared in common with his codefendants.

A party seeking to adopt the arguments set forth in the brief of a codefendant pursuant to F.R.A.P Rule 28 is required, at the very least, to include "a statement describing **in detail which briefs and which portions of those briefs are adopted**." F.R.A.P. 11th Cir. 28-1(f) (emphasis supplied). Dees's statement of adoption fails to state in any detail which briefs and which portions he seeks to adopt, and thus, fails to comply with our procedural rules.

Upon our own, independent review, it appears that the only brief of an appellant related to Dees is that of Robert Pettway, who submitted a brief in his appeal of United States v. Pettway, No. 04-14658-AA. We have, on occasion, allowed a party to adopt an argument of a co-appellant, despite a failure to technically conform with the appellate rules of adoption, where it would be anomalous to reverse some convictions on an error (raised in the argument to be adopted) that affected all of the defendants involved. See, e.g., United States v. Gray, 626 F.2d 494, 497 (5th Cir. 1980). We, however, have reviewed the

21

arguments raised in Pettway's brief, along with the record on appeal, and conclude that the arguments adopted by Dees from Pettway's brief lack merit as to Dees. Therefore, we decline to further address any potentially adopted arguments from Dees's perspective in this opinion.

In sum, we conclude that (1) the evidence was sufficient for a reasonable juror to convict Dees; (2) the district court did not abuse its discretion by admitting the government's 404(b) evidence; and (3) any error committed by failing to address Dees's two-level enhancement under the guidelines was harmless because it did not and would not have affected his sentence. We, therefore, affirm Dees's conviction and sentence.

**AFFIRMED.**